# WILLIAM B. MORGAN and George Schas, Respondents, v. H. B. JENSON, Appellant.

### (181 N. W. 89.)

**Adverse possession — evidence as to encroachments, etc., held to show visible and notorious possession.**

Plaintiffs, the record owners of a certain city lot, brought an action against defendant to determine adverse claims with reference thereto. Defendant set forth his adverse claims, whereby he claimed title, by reason of certain encroachments on the north 18½ inches of the lot, and further claimed that he and his predecessors had been in possession thereof, under claim of title or claim of right, for twenty years or more. The nature, extent, and duration of the encroachments are shown by the evidence.

The judgment of the trial court was in favor of plaintiff. For reasons stated in the opinion, it is held, the judgment is right and is sustained by the evidence.

Opinion filed January 4, 1921.

Appeal from judgment of District Court of Cass County. Honorable *A. T. Cole,* Judge.

Trial *de novo* demanded by defendant and appellant.

Judgment affirmed.

*Pierce, Tenneson & Cupler,* for appellant.

"When it shall appear that there has been actual continued occupation of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied and no other shall be deemed to have been held adversely." Comp. Laws 1913, §§ 7362, 7368, 7369.

If there is a privity between successive occupants holding adversely to the true title continuously, the successive period of occupation may be united or tacked to each other to make up the time of adverse hold-

NOTE.—The authorities are unanimous in requiring adverse possession to be continuous and uninterrupted for the entire statutory period before anything is gained by it, as will be seen by an examination of the cases in note in 15 L.R.A. (N.S.) 1202, on unbroken continuity as essential element in adverse possession.

On necessity and requisites of continuity of adverse possession, see notes in 13 Am. Dec. 185, and 331.

ing prescribed by the statute as against such title. 2 C. J. § 66, p. 82; Comp. Laws 1913, § 7362; Streeter J. Co. v. Frederickson, 11 N. D. 300; Nash v. Northwest Land Co. 15 N. D. 566; Martin v. O'Brien (N. D.) 173 N. W. 809.

Payment of taxes not essential to acquire title by adverse possession. Power v. Kitching, 10 N. D. 254.

The twenty-year statute is more than a statute of repose. Martin v. O'Brien, supra; Steinway v. Brown, 38 N. D. 611.

To render possession hostile, there need be no ill-will, malevolence, or desire to injure. 2 C. J. 122; Ballard v. Hanson (Neb.) 51 N. W. 295.

*Barnett & Richardson,* for respondents.

Defendant is not entitled to claim the right to tack the possession of Faley to any portion of lot 19, which was not included in Faley's deed to the defendant. Wilhelm v. Herron (Mich.) 178 N. W. 769; Graeven v. Devies, 31 N. W. 915; Lake Shore R. Co. v. Sterling (Mich.) 155 N. W. 383; Maher v. Brown (Ill.) 56 N. E. 181; Messer v. Society (Cal.) 84 Pac. 837.

It is the knowledge, either actual or imputable, of the possession of his lands by another, claiming to own them bona fide and openly, that affects the legal owner thereof. Buttz v. Hames (N. D.) 156 N. W. 547; Jones v. Weaver (Tex.) 122 S. W. 621; O'Boyle v. Kelly (Pa.) 94 Atl. 448.

GRACE, J. This is an action to determine adverse claims to certain real property. A statement of the material facts will present the issue to be determined.

Plaintiff claims ownership and title to all of lot 19 in block 3, of Keeney & Devitt's addition to Fargo. The defendant claims title to all of lot 18, in the same block, which adjoins lot 19 on the north. He also claims title and ownership to the north 18½ inches extending east and west, the entire length of lot 19, and this, on the theory that he and his predecessors have continued to occupy, adversely to plaintiff, this tract, for more than twenty years prior to the commencement of this action.

Lot 18 is in the northwest corner of lot 3, and is bounded on the north by First Avenue North, and on the west by Fourth street. In

width, north and south, each lot is 28 feet, and 150 feet in length east and west.

Plaintiff's chain of title to lot 19 is as follows: The title thereto was conveyed on June 20, 1877, to Mary A. Ball. On November 6, 1912, by a final decree in her estate, to Wilbur F. Ball. On June 14, 1913, by final decree in the estate of Wilbur F. Ball, to Grace Ball Wheelock, William F. Ball and John G. Ball. Subsequently, William Ball acquired the interest of Grace Ball Wheelock and John G. Ball.

September, 1913, William B. Morgan purchased lot 19 from William Ball, under contract for deed, and about a year later received conveyance thereof, by deed, from William Ball, which is Exhibit "1."

In the latter part of 1919, Morgan sold lot 19, under contract for deed, to plaintiff, George Schas. There has never been any buildings on lot 19. It has always been vacant and unoccupied. All taxes thereon have been paid by the plaintiffs and their predecessors. The defendant has never paid any taxes thereon.

The chain of title of lot 18 is as follows: On December 7, 1893, John Faley acquired title to lot 18. He conveyed it to the defendant on May 18, 1903, who has continued to own, occupy, and control it and the buildings thereon continuously since that time. There are five buildings now on lot 18, have been on it since 1893 and 1894.

Building No. 1 faces on Fourth street. There was a house built where this house now stands, by a Mrs. Brown, who owned the lot prior to the time it was acquired by John Faley. This house was burned in a fire of 1893, and another house built after the fire, in the same location, in 1893. The foundation wall of the bay window extended over the boundary line about $6\frac{1}{2}$ inches, and the eaves and roof of that window extended over the line about $18\frac{1}{2}$ inches, on lot 19.

Building No. 2 is a coal and wood shed, used in connection with this dwelling house, and extends on lot 19 about 10 inches at the base line, and about 15 inches at the roof.

Back of this there is another dwelling house, facing north, fronting on First Avenue North. It was placed there in 1894. The south line of this building, at the foundation, extends on lot 19 $10\frac{1}{2}$ inches, and at the eaves and roof 15 inches. In connection with this dwelling, and to the east of it, is an outhouse or store room, which, at its foundation, extends on lot 19 11 inches, and 15 inches at the eaves and roof.

To the east of the latter building is a frame building, facing north on First avenue. It extends, at its base, on lot 19 about 8¼ inches, at the eaves and roof about 12 inches. The buildings are not on a straight line, east and west, on plaintiff's lot. Some extend over on lot 19 more than others.

The parties to this action do not agree upon the exact distance each building is over on the lot. But, for the purposes of this case, it will be assumed that the distance the buildings are over on lot 19 is substantially as above stated. The houses are occupied at least part, and perhaps most, of the time for residential purposes.

The only specification of error is a request for a retrial of the entire case in this court, upon this appeal. Plaintiff has full record title to all of lot 19; and defendant to all of lot 18.

Under the provisions of § 7365, Comp. Laws 1913, plaintiff is presumed to have been possessed thereof within the time required by law, and the occupation of such premises by any other person shall be deemed to have been under and in subordination to such legal title, unless it appears that the lot in question has been held and possessed adversely to such legal title for twenty years before the commencement of this action.

Section 7368, Comp. Laws, provides: "When it shall appear there has been an actual continued occupation of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied and no other shall be deemed to have been held adversely."

Section 7369, Comp. Laws, provides:

"For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only.

"(1) When it had been protected by a substantial inclosure.

"(2) When it has been usually cultivated or improved."

Under our statutes there are two ways of asserting title by adverse possession.

(1) That the occupant or those under whom he claims entered into possession of premises under claim of title, exclusive of any other right, founding such claim upon a written instrument, or upon a decree or

judgment of a competent court, as provided in § 7367, Comp. Laws 1913.

(2) Where the occupation is under claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, as provided in §§ 7368, 7369, supra.

As we view defendant's contention, it is a claim of title by adverse possession, resting upon the assertion that he and his predecessors have been in open, notorious, continuous, and exclusive possession of the parcel of land in dispute for a period of twenty years or more.

We think it manifest that the burden is on one claiming title by adverse possession to prove his assertions, with reference to the elements of his claim, by clear and convincing evidence, and that the statutes of adverse possession should be strictly construed.

It is clear from the evidence that defendant's actual possession, when limited to his personal possession, is not of such length of time as to place him in position to claim adversely to the plaintiff. The defendant has been in possession of the premises only since 1903. It is only when he tacks the possession of Faley to his that he may be said to have placed himself in such position that he can claim a right to assert claim of title adversely to plaintiff. If he may not properly tack Faley's possession to his, then his claim of title by adverse possession would fail.

In short, unless there is competent evidence to show that he succeeded to Faley's claim to the disputed strip, he would not be in position, as a matter of law, to tack Faley's claim of title and possession to his. The first knowledge that the defendant had that Faley claimed title to the disputed tract, and the only competent evidence of the first time Faley did claim title to this strip, was when the defendant purchased from him lot 18, in 1903.

Assuming the testimony shows that Faley so claimed at that time, and that he then so informed the defendant, in the face of what subsequently transpired in defendant's purchase of lot 18 from Faley, can it be said Faley transferred any of his claim of title or right to the disputed strip, to the defendant? It appears that Faley deeded to Jenson' only lot 18, and nothing more. By that deed he did not convey any claim of title or right to the disputed strip, though defendant admits that Faley at that time told him that a portion of the buildings were on lo 19 and that he claimed to own the land on lot 19, upon which such

buildings were located, but, by the deed, he did not convey the disputed strip. He conveyed lot 18 only, which was 28 feet wide and 150 feet in length. It must be clear that, if Faley had acquired any title or claim of right to the disputed strip, he did not convey it to defendant by his deed.

The rule would seem to be that evidence of adverse possession is to be construed strictly, and every presumption is to be made in favor of the true owner. We think this is really the meaning of our statutes in regard to adverse possession, and such was the rule laid down in the case of Sydnor v. Palmer, 29 Wis. 252; Wilhelm v. Herron, 211 Mich. 339, 178 N. W. 769; Vicksburg, S. & P. R. Co. v. Le Rosen, 52 La. Ann 192, 26 S. W. 854; Messer v. Hibernia Sav. & Loan Soc. 149 Cal. 122, 84 Pac. 837.

Faley, when he sold defendant lot 18, ceased his possession of the disputed strip. He made no attempt to convey it to the defendant. The possession of it must have reverted to the true owner, who retains title of it unless it has been divested by the adverse possession of the defendant since he purchased lot 18, and entered into possession of that lot under his deed, and into possession of the disputed strip, by occupying the same, but without any right, under the deed, to do so.

There is no evidence of a parol agreement between Faley and the defendant, whereby the possessory right of Faley, if any, to the disputed strip, is transferred to the defendant. Hence, there was no privity of estate between Faley and the defendant, the successive parties in possession. In these circumstances, defendant could not tack the possession of Faley to that of his, so as to constitute a single, continuous possession. Defendant's occupancy was for approximately seventeen years only, while the statute requires occupancy for a period of twenty years before one, claiming title by adverse possession, can be heard to assert the claim of title against the true owner. Hence defendant did not hold adversely to plaintiff and his predecessors for the time required by our statute, supra. In what the writer has above stated with reference to tacking, he is speaking for himself only.

If we are correct in what we have above stated, we could well conclude the opinion at this point. However, appellant has laid much stress on additional points and we will briefly refer to them. It is incumbent upon defendant to prove, not only that his possession has been

for the statutory period, but also that it has been open, i. e., visible.

To prove this, defendant offered evidence, in detail, of the character of the buildings above mentioned. The plaintiff characterizes all the buildings as shacks. From the evidence as to the character of the buildings, we think the word "shacks," as its meaning is commonly understood, is as expressive a term as could be used to convey an idea of the real character of all the buildings, with the exception, perhaps, of the story and a half or two story dwelling, fronting on Fourth street, which is a little more substantial than the remainder of the buildings. But, as we view the evidence, none of the buildings, including the large building furthest west, are of substantial and permanent nature, sufficient to call the attention of the owner of the record title, that an encroachment was taking place upon his property.

It is not a case where a large, substantial, expensive, permanent building has been partially constructed upon an encroachment on the land of the adjoining record owner, under which buildings there has been constructed an expensive foundation, and large and expensive basements, etc.

An encroachment of this character could be said to be open, visible, or notorious, so as to generally be sufficient to attract the attention to owner of the property upon which such encroachment has been made.

The evidence also shows, that no part of the large dwelling encroaches upon lot 19, except the bay window, the foundation of which is over on lot 19 a few inches, and the roof thereof was over a few inches more than the foundation. Otherwise, the whole of this building is on lot 18.

Such an encroachment certainly could not be said to be sufficient to attract the attention of, or be visible to, the owner of the record title of lot 19, and all of the buildings, in the condition they were, were insufficient for that purpose.

The only remaining matter that needs any consideration relates to the claim of appellant, that plaintiffs and their predecessors had actual notice of defendant's claim of title to the disputed strip, and his endeavor to prove such actual notice, by certain conversations and claims had with, and made to, one Fred Ball, who it is maintained was the agent of the then record owner, who the defendant endeavored to show was Wilbur F. Ball, father of Fred Ball. These conversations were claimed to have been had about 1904.

Plaintiff claims Mary A. Ball and Wilbur F. Ball were both living at that time, and that Mary A. Ball was then the record owner of lot 19. Necessarily, if at that time she was the record owner, any conversation, in the respect mentioned, had with Fred Ball, the alleged agent of the father, would be no notice to Mary A. Ball.

It is not very clear from the record, when Mary A. Ball died. It does appear that by final decree in her estate, on November 6, 1912, title to lot 19 was transferred to Wilbur F. Ball. We think it could be reasonably inferred from this that she was living in 1904, the time of the alleged conversation. We think such evidence, in these circumstances, was wholly incompetent, as showing Mary A. Ball had actual notice.

But if it were assumed that Wilbur F. Ball was the record owner at the time of the alleged conversation, and that Fred Ball was, in some capacity, his agent, it does not appear from the evidence in what capacity Fred Ball was acting as an agent, other than a general statement that he was looking after the property. Such a general statement does not show that, if he were such agent, he had any authority to look after any matters affecting the title of the property.

But, further than this, we think it is a general rule that agency cannot be established by the declaration of the agent only. We do not think there is sufficient evidence in the record to show an agency, or to show that Fred Ball had any authority to represent his father, or anyone else, with reference to matters affecting lot 19. We think his evidence was wholly incompetent, and, therefore, inadmissible to prove any of the issues in this case, and we so hold.

The issues here involved have been ably presented to this court by eminent counsel on either side. The authorities on the subject of adverse possession have been extensively collated in their respective lucid and able briefs. The appellant, however, must fail in the accomplishment of the purpose for which this action was brought, and this, by weakness and failure of proof of material facts necessary to sustain his contention, not the least among which is the character of the buildings, as above described. There is also an insufficiency of evidence, amounting to failure of proof, to show occupation and possession, under claim of title and claim of right, for a period of twenty years or more, as required by statute, and, lastly, the failure of appellant to show any

actual notice thereof to the record owner of the property during that time, other than the actual notice to Morgan just before the commencement of this action, which avails nothing.

We think the evidence is insufficient, and that the proof fails to show visible, notorious, continuous, and exclusive possession of the parcel of land in dispute, in the appellant, for the time required by the statute, and hence, he has acquired no title thereto by his alleged adverse possession.

The judgment appealed from is affirmed. Respondent is entitled to his costs and disbursements on appeal.

ROBINSON, J., concurs.

BRONSON, J. I concur in result.

CHRISTIANSON, Ch. J. (concurring specially.) I concur in an affirmance of the judgment on the ground that the possession of the defendant and his grantor was not of such character as to indicate any assertion by either of them of claim of ownership to any portion of lot No. 19. See Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 123 N. W. 390, 1 R. C. L. pp. 692, 705.

I disagree with what is said in the majority opinion on the question of tacking. As I understand the law, all that is necessary to privity between successive occupants of property, and in regard thereto, is that one receive his possession from the other by some act of the other or by operation of law. 1 R. C. L. p. 718. All that the law requires is a continuous adverse possession for the full statutory period. The continuity of the original possession may be effected by any conveyance or understanding the purpose of which is to transfer to another the rights and the possession of the adverse claimant, when accompanied by an actual delivery of possession. And, "where the owner of a tract of land occupies other property, adjacent thereto, by adverse possession, it is not material that in selling the whole the land claimed by adverse possession is not described in the conveyance." If it is the intention of the grantor to transfer and of the grantee to take the whole of the property, and possession of the whole is actually delivered, the continuity of the adverse possession is not broken, and the doctrine of tacking is

47 N. D.—10.

applicable. 1 R. C. L. pp. 719, 720; Wishart v. McKnight, 178 Mass. 356, 86 Am. St. Rep. 486, 59 N. E. 1028; Clithero v. Fenner, 122 Wis. 356, 106 Am. St. Rep. 978, 99 N. W. 1027; St. Louis Southwestern R. Co. v. Mulkey, 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913C, 1339; Vandall v. St. Martin, 42 Minn. 163, 44 N. W. 525.

BIRDZELL, J., concurs.