H. F. BILBY and Maggie Mae Bilby, as joint tenants, and Leroy Blaylock, Plaintiffs and Respondents,

v.

John P. WIRE and Bruce E. Wire, and The California Co., a foreign corporation, Defendants and Appellants.

No. 7582.

Supreme Court of North Dakota.

July 13, 1956.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for defendants and appellants.

Reichert & Reichert, Dickinson, for plaintiffs and respondents.

JOHNSON, Judge.

The plaintiffs, H. F. Bilby and Maggie Mae Bilby, as joint tenants, and Leroy Blaylock, seek to quiet title to all of Section 27, Township 143 North of Range 101 West of the 5th P.M., in Billings County, North Dakota. The Bilbys, as joint tenants, claim to be the owners of an undivided one-half interest in and to all of the oil, gas and other minerals, and Leroy Blaylock, the owner of the other one-half interest therein, in and under the above described land. The complaint is in statutory form.

The defendants generally deny the allegations of the complaint and allege the plaintiffs are estopped from claiming any title to the minerals under the above described real property on the basis that their predecessor in interest, Walter J. Odenthal, procured title thereto from the Northwestern Improvement Company by fraud; that Odenthal on August 31, 1933, conveyed the premises to Bruce E. Wire, the then owner, and that when he later secured title to the minerals from the Northwestern Improvement Company, the same passed to Wire by operation of law; that the statute of limitations has run against the plaintiffs' claim; that the defendants have acquired title by adverse possession. The defendants counterclaim setting up a title in themselves and ask that the title be quieted in them as against the plaintiffs.

The plaintiffs replied to the counterclaim and allege that they are innocent purchasers for value of the mineral estate in question. The action was dismissed with prejudice as to the defendant, the California Company.

The trial court found for the plaintiffs and title to the minerals was quieted in them. The defendants have appealed from the judgment quieting title in the plaintiffs to the minerals and demand a trial de novo.

The facts giving rise to the controversy involved between the parties may be briefly stated as follows:

On November 10, 1924, the Northwestern Improvement Company, the then owner of Section 27, Township 143, Range 101, conveyed the surface to Walter J. Odenthal, reserving title to all oil, gas and other minerals. This deed was recorded in the office of the register of deeds, Billings County, North Dakota, March 3, 1925.

On June 14, 1932, tax deed was issued to the premises to Billings County, North Dakota. Tax title was taken for nonpayment of 1927 and subsequent taxes. The validity of the tax title is not in dispute.

On October 24, 1932, Billings County conveyed the premises by county deed to Cora A. McClain. She and her husband

in turn, by warranty deed conveyed the premises November 4, 1932, to John P. Wire. John P. Wire, by warranty deed dated November 5, 1932, conveyed the premises to Bruce E. Wire.

On August 31, 1933, Odenthal and his wife by an instrument designated as a "quitclaim deed" did:

"Remise, release and quitclaim; unto said party of the second part, (Bruce E. Wire), his heirs and assigns, all the following-described real estate * *."

Then follows the description of the premises involved. This deed was recorded on September 25, 1933. On January 21, 1934, Bruce E. Wire, conveyed the North Half, (N½) of Section 27-143-101 to John P. Wire. This deed was recorded February 24, 1934. At the time of the commencement of the quiet title action the title, therefore, stood in the name of John P. Wire to the North Half (N½) of Section 27, Township 143 North of Range 101 and in Bruce E. Wire to the South Half (S½) of said section.

On October 9, 1951, John P. Wire executed an oil, gas and mineral lease to Andrew H. Gay, covering the North Half (N½) of Section 27, Township 143 North of Range 101 West. On the same day, Bruce E. Wire executed an oil, gas and mineral lease on the South Half (S½) of Section 27 to Andrew H. Gay. On October 29, 1951, Andrew H. Gay assigned this lease to The California Company, a California corporation.

On September 13, 1936, W. J. Odenthal, also known as Walter J. Odenthal, wrote to Mr. Cook, the Eastern Land Agent for the Northern Pacific saying:

"Wish to know if I could buy a mineral right on the following land so I could get a little out of my equity. Sect. 15-23-27-143-101 Billings Co. N. D. Contract # 6081 N".

This letter reached the land commissioner for the Northern Pacific Railroad Company

and the Northwestern Improvement Company. Apparently pursuant to this request, on September 28, 1936, the Northwestern Improvement Company, by quitclaim deed, sold, conveyed and transferred all minerals, including coal, iron, natural gas and oil and rights of mining reserved and excepted in deed of November 10, 1924, to Walter J. Odenthal. This deed covered the three sections mentioned in Mr. Odenthal's letter, one of which was Section 27. The deed was recorded on October 17, 1936.

On April 5, 1954, Walter J. Odenthal and his wife, conveyed all the minerals in and under Section 27, Township 143 North of Range 101 West to H. F. Bilby and Maggie Mae Bilby, his wife, as joint tenants. On April 8, 1954, Bilby and his wife conveyed by mineral deed to Leroy Blaylock an undivided one-half interest in the oil and gas and other minerals under Section 27-143-101, Billings County, North Dakota. Both mineral deeds were recorded April 12, 1954. This was the status of the title at the time of the commencement of this action on May 6, 1954.

It is contended that Walter J. Odenthal procured title to the minerals from the Northwestern Improvement Company by fraud, and that, therefore, he holds title thereto in trust for the rightful owners. This contention necessarily involves not only a discussion of the issue of fraud, but also the nature of title owned by Odenthal and acquired by Billings County by its tax title proceedings.

It will be remembered that when Billings County took tax deed to Section 27, Township 143 North of Range 101, Billings County, North Dakota, on June 14, 1932, the title to the surface of the land was in Walter J. Odenthal pursuant to deed given by the Northwestern Improvement Company dated November 10, 1924. Title to the minerals was in that company under and by virtue of the reservation contained in said deed excepting and reserving unto the grantor and its successors, "all minerals of any nature whatsoever, including coal,

iron, natural gas and oil, upon or in said land * * *.".

The testimony indicates that it was the policy of the Northwestern Improvement Company under certain circumstances to deed the minerals, if not deemed of value, to the surface owner of the land. As of the time of the quitclaim deed conveying the minerals to Walter J. Odenthal, the surface ownership of the land was in the defendants, John P. Wire and Bruce E. Wire.

On January 18, 1933, attorneys for Bruce E. Wire, then owner of the land, wrote a letter to Walter J. Odenthal, the former surface owner, in which they referred to the fact that Auditor's Tax Deed was issued covering the property on June 14, 1932, and that Walter J. Odenthal was the former owner under a deed dated November 10, 1924, from the Northwestern Improvement Company. Thus it appears that Mr. Wire's attorneys were aware of the deed from the Northwestern Improvement Company to Walter J. Odenthal. In this letter they said in part:

"We are wondering if there is any reason that you know of why Billings County, North Dakota, would not have had a good title to this property to convey. We assume that the property passed from you to Billings County, North Dakota, through some tax sale or taking for taxes.

"Will you please be good enough to drop us a note advising whether or not the title in Billings County, North Dakota, is good so far as you know on this piece of land?"

At the bottom of this letter, written in ink, we find:

"P.S. The above title should be O.K." Signed "W. J. Odenthal".

■ Tax title was taken after severance of surface and mineral estates. Odenthal, at the time of his letter did not own the minerals. They were still outstanding in the Northwestern Improvement Company under its deed of November 10, 1924.

"After severance, the surface and minerals are held by separate and distinct titles in severalty, and each is a freehold estate of inheritance." Beulah Coal Mining Co. v. Heihn, 46 N.D. 646, 180 N.W. 787; Northwestern Improvement Co. v. Morton County, 78 N.D. 29, 42, 47 N.W.2d 543, 550; McGee v. Stokes' Heirs at Law, N.D., 76 N.W.2d 145, 155.

When Billings County took tax deed, two separate and distinct titles in severalty existed to the land. The tax deed proceedings are not before us. The evidence does not show whether there are any minerals under the land involved which would be subject to assessment. No contention is made, nor does the record show, that the minerals under this land, if any, were ever assessed. As far as we can determine the only provision under our law for the assessment of minerals in place is found in Sections 57–0224 and 57–0225 NDRC 1943. Section 57–2430 NDRC 1943 provides for the sale of coal and mineral reserves for nonpayment of tax or taxes. These statutes clearly contemplate, after severance, separate taxation of minerals, if any. Failure to pay taxes on mineral reserves subjects the owner to forfeiture of his estate in the same manner as provided by law for the sale of real property for delinquent taxes. The statute provides for such forfeiture when the owner "neglects or refuses to pay any taxes legally assessed and levied thereon."

It is the duty of the assessor to list for taxation coal and other minerals lying under any land the ownership of which has been severed from the ownership of the overlying strata to the owner thereof. Sections 57–0224 and 57–0225 NDRC 1943. It is, of course, perfectly obvious that if it has not been ascertained that any coal or other minerals exist under the land, it is impossible to assess them under these stat-

utes. As we shall see, however, that is entirely immaterial.

In the case of Washburn v. Gregory Co., 125 Minn. 491, 147 N.W. 706, L.R.A. 1916D, 304, it was held that a tax certificate based upon tax proceedings in which the property is designated by its government description without mentioning a mineral interest owned separately from the surface, does not cover the mineral interest. At the time that case arose under the Minnesota statutes provision was made for separate assessment of the mineral interests apart from those of the surface rights and a provision existed for the sale of such taxes. In the opinion the court said in 147 N.W. at page 708:

"But it was the duty of the taxing officers, under the statute, as well as under the common law, to assess and tax separately the interests of plaintiff and those of the owner of the surface. The deed separating the mineral rights from the surface rights was of record at the time the tax was levied and became a lien. It is to be presumed that the taxing officers intended to follow the law."

In the case at bar we may assume in absence of proof to the contrary that there was no assessment made of any minerals under the land involved in this action because there is no indication in the evidence that any minerals have been discovered under this land. Here the assessment of the taxes upon which tax title is based was made nearly three years after the severance of the surface and the minerals. The Auditor's Tax Deed refers to the land only by the government description.

"When the mineral estate is owned separately from the surface estate, and the land is assessed in the name of the owner of the surface, it would seem that even a valid tax sale will not carry the mineral estate. Washburn v. Gregory Co., 125 Minn. 491, 147 N.W. 706, L.R.A.1916D, 304. Sims v. Vos-

burg, 43 N.M. 255, 91 P.2d 434; Kernkamp v. Wellsville Fire Brick Co., 237 Mo.App. 457, 170 S.W.2d 692." Ohio Oil Co. v. Wyoming Agency, 63 Wyo. 187, 201, 179 P.2d 773, 777.

We, therefore, hold that where the county takes tax title, after severance, by which the property is described by its government description, without mentioning the mineral interest separately from the surface, the county acquires tax title to the surface only. Sims v. Vosburg, supra; Kernkamp v. Wellsville Fire Brick Co., supra.

When Walter J. Odenthal quitclaimed to Bruce E. Wire, August 31, 1933, as the former owner of the surface of the land, he conveyed only his interest, if any, in the land, unless his quitclaim deed and the circumstances give rise to an estoppel. Bruce E. Wire had constructive notice of the records in the office of the register of deeds of Billings County, North Dakota. It may be true that when the Northwestern Improvement Company subsequently quitclaimed the minerals under Section 27 to Odenthal on September 28, 1936, it was not aware of the fact that he did not own the surface of the land. If Odenthal's letter of September 13, 1936, constituted a misrepresentation, it was fraud as to the Northwestern Improvement Company and not as to these defendants. Apparently without investigation, it sold the minerals to Odenthal. The Northwestern Improvement Company has made no claim of fraud. Walter J. Odenthal owed no duty or obligation to Bruce E. Wire, unless it accrues by virtue of his quitclaim deed dated August 31, 1933. Bruce E. Wire's title came through the county. It was perfectly natural for him to attempt to strengthen his tax title by procurement of a quitclaim deed from the former owner of the property. That is a common practice. It is clear that such was the purpose of the quitclaim from Odenthal to Wire. The surface title in Billings County was valid. If Odenthal's statement to Wire's

attorneys amounts to a representation, it can have reference only to the state of the title existing at the time Billings County obtained tax deed. When thus interpreted it does not constitute a basis for the charge of fraud.

Bruce E. Wire may have been misled by the Abstract of Title that he obtained covering the land involved in this action. It fails to disclose that the deed from the Northwestern Improvement Company, as shown by entry No. 27, contained a mineral reservation. However, the record of the deed does show such reservation. If Mr. Wire relied on the contents of the abstract rather than the record, that was not the fault of Mr. Odenthal.

It is contended by the defendants that the quitclaim deed given by Odenthal and his wife to Bruce E. Wire purports to and did transfer and convey all of the real estate described therein, and that, therefore, his after-acquired title inured to the benefit of his grantee and his successors. We will, therefore, examine the contents of this quitclaim deed.

█ It does not purport to be a grant of title. It does not contain the word "grant". It contains no covenants or warranties of title. It does not even convey the grantor's right, title and interest in the property. It merely remises, releases and quitclaims such interest as he had, if any. Odenthal had no interest when he and his wife executed and delivered their quitclaim deed to Wire. So they conveyed nothing.

█ A quitclaim deed is one which purports to convey, and is understood to convey, nothing more than the interest or estate in the property described of which the grantor is seized or possessed, if any, at the time, rather than the property itself. Frandson v. Casey, N.D., 73 N.W.2d 436.

If, therefore, the quitclaim deed of Walter J. Odenthal to Bruce E. Wire, dated August 31, 1933, does not operate to convey his after-acquired title to the minerals,

or if the defendants have not acquired them by adverse possession, the plaintiffs must prevail.

█ After-acquired title by the grantor will not, as a general rule, inure to the benefit of the grantee under a quitclaim deed. 26 C.J.S., Deeds, § 118, p. 416; State v. Kemmerer, 14 S.D. 169, 84 N.W. 771, 773. In that case the court said:

"It [referring to the quitclaim deed] does not purport to convey the property, but only the grantor's right, title, and interest therein. Such a deed, therefore, does not have annexed to it, under the statute, implied covenants, and an after-acquired title does not pass by operation of law to the grantee or his successors."

Our statute with reference to after-acquired title states:

"Where a person purports by proper instrument to grant real property in fee simple and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or his successors." Section 47–1015 NDRC 1943.

The quitclaim deed here in question does not purport to convey the property; it is not a grant in any sense.

█ In a long line of decisions it has been held that a quitclaim deed of all the right, title and interest of the grantor, purports to convey, and does convey, no more than the present interest of the grantor, and does not operate to pass an interest after-acquired. The grantor under such a deed will not be estopped from asserting an after-acquired title. 44 A.L.R. 1276; 162 A.L.R. 556, 566.

For a discussion of the nature of a quitclaim deed, see Volume 5, Thompson on Real Property, Permanent Edition, Section 2812, p. 769; Frandson v. Casey, N.D., 73 N.W.2d 436.

The after-acquired title of Walter J. Odenthal to the minerals in and under the land did not inure to the benefit of the defendants.

■ We will now consider whether the defendants have acquired title to the minerals by adverse possession.

"The decisions are unanimous in holding that where the title to the mineral right has been severed from the title to the surface, possession of the surface by its owner is not adverse to the owner of the mineral below it. The mineral owner does not lose his possession by any length of nonuser, and the surface owner cannot acquire title to the minerals by adverse possession based on his exclusive and continued occupancy of the surface alone." 1 Am.Jur., Adverse Possession, Sec. 119, p. 858. See note 15 for citation of decisions.

Inasmuch as the severance of the mineral estate from the surface creates two estates which are as distinct as if they contained two parcels of land, it follows that the title to one cannot be acquired by adverse possession of the other. 1 Am.Jur., Adverse Possession, Section 119, page 858; Beulah Coal Mining Co. v. Heihn, 46 N.D. 646, 180 N.W. 787; President, etc. of Delaware & H. Canal Co. v. Hughes, 183 Pa. 66, 38 A. 568, 38 L.R.A. 826, 63 Am.St.Rep. 743. For later cases see 35 A.L.R.2d 154.

"Where, however, there has been a severance of the legal interest in the minerals from the ownership of the land, it has been held as to solid minerals, and the same rule has been applied to oil and gas, that adverse possession of the land is not possession of the minerals or oil and gas, and does not defeat the separate interest in them." Volume 1A, Summers Oil and Gas, Permanent Edition, Sec. 138.

The rule that where the surface and mineral estates have been severed, possession of the surface by its owner cannot be adverse to the owner of the minerals, and that there can be no adverse possession of the severed mineral estate in the absence of mining operations, is not changed by the fact that no one knows what minerals are or are not present. 35 A.L.R.2d, Minerals–Adverse Possession, Section 21, page 165; Ohio Oil Co. v. Wyoming Agency, 63 Wyo. 187, 179 P.2d 773.

In the case of Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797, this court held that where the owner of the surface estate and of an undivided one-half interest in the oil and gas, conveyed his interest in the oil and gas by an allegedly fraudulent deed, and the mineral grantee conveyed the mineral interest to others, the continued possession of the surface by the mineral grantor, being entirely consistent with the record title, was insufficient to charge such subsequent purchaser with the rights of the surface owner, since the possession of the surface of the land by the record title owner thereof is not inconsistent with or adverse to a separate mineral estate in another.

■ The possession by the defendants of the surface under color of title with payment of taxes for the statutory period did not constitute possession of the severed minerals and was not adverse as to the title holder thereof.

■ In a situation such as exists here, Section 12–1714 NDRC 1943, has no application. Without actual possession there can be no adverse possession. Grandin v. Gardiner, N.D., 63 N.W.2d 128. The defendants never had possession of the minerals under the land involved, if any. They, therefore, could not acquire title to them by adverse possession. The statute clearly contemplates possession. In the case of Accola v. Miller, N.D., 76 N.W.2d 517, we held that under Section 12–1714 NDRC 1943 the invalidity of the deed extended only to the party in adverse possession.

■ The statute of limitations does not apply, as respects the acquisition of title

to property, to anyone not in possession. A mere claim, for whatever time, unaccompanied by actual possession, can give no right under the statute. 53 C.J.S., Limitations of Actions, § 23, p. 958.

Possession is one of the indispensable elements in adverse possession. 2 C.J.S., Adverse Possession, § 19, p. 533. For a long list of cases see Notes 47 and 48.

One claiming land adversely must, in order that his claim be effective as against the owner, be in actual possession thereof. 1 Am.Jur., Adverse Possession, Section 128, page 864; Morgan v. Jenson, 47 N.D. 137, 181 N.W. 89. Without such adverse occupancy, the law assumes the possession to be in the owner of the legal title. The statutory requirements are not satisfied by the assertion of the right of possession. 1 Am.Jur., Adverse Possession, Section 128, page 864.

It is further contended that the plaintiffs in this action stand in the same position as their grantor, Odenthal; that if he had brought this action he would be an involuntary trustee of the title for the defendants. It is then argued that the plaintiffs are in no better position than Odenthal would be and that any defenses available against him are also available against these plaintiffs; that they are not innocent purchasers for value. It is true that the plaintiffs examined the record title, ascertained that the defendants held title only to the surface, knew that the defendants had leased the land for gas and oil, had the title examined by an attorney and were advised that an action would be necessary to determine the ownership of the minerals. But as we have seen, there is no basis for an adverse claim by the defendants to the minerals. If Odenthal had maintained this action he would not be estopped from asserting title either on the basis of his actions or his quitclaim deed given to Bruce E. Wire, August 31, 1933. The law applicable to innocent purchasers is not here involved.

The plaintiffs are the owners of the minerals in and under the premises involved in this action, if any.

The judgment of the trial court is affirmed.

BURKE, C. J., and SATHRE, GRIMSON and MORRIS, JJ., concur.