**In re Glen KUETHER and Diane Kuether, Debtors.**

**Bankruptcy No. 92–30727.**

United States Bankruptcy Court, D. North Dakota.

Feb. 22, 1993.

Joseph Vogel, Mandan, ND, for debtors.

Clare Hochhalter, Bismarck, ND, for USA/FmHA.

Phillip D. Armstrong, Minot, ND, trustee.

### ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the court for confirmation is a Chapter 12 plan of reorganization filed October 16, 1992, by the Debtors, husband and wife, Glen and Diane Kuether. The confirmation hearing was held on January 25, 1993. The United States of America, acting through the Farmers Home Administration (FmHA), objects to the confirmation, charging that it has no claim in the Debtors' bankruptcy proceeding amenable to Chapter 12 treatment, and whatever interest the Debtors may yet have in the farm property is inferior to FmHA's interest. In the event that it does have a claim against the estate FmHA additionally objects on the basis of nonfeasibility.

The Debtors, husband and wife, although filing a petition under Chapter 12, indicated in their schedules that their income was derived principally from non-farm sources. Glen indicated his occupation to be that of farmer/carpenter and Diane indicated hers to be that of teacher/painter. From these sources the schedules revealed a total combined monthly income of $2,049.00 of which $833.00 was farm-generated. Total monthly expenses were listed at $1,298.00 and are solely household in nature. The schedules reveal no farm machinery, equipment, supplies, crops or animals of any kind. At the confirmation hearing Glen stated that although he and his wife are residing on a farmstead, they are not at the present in possession of any livestock. In fact, most of the land itself which is critical to the issue of reorganization, is presently cash rented for $10,000.00 annually. He further acknowledged that he was unemployed at the time of the filing and most recently has not worked since January 4, 1993.

The Debtors came into possession of the farmland comprising 463 acres situated in Morton County, in 1983 in consequence of a defaulted loan to an individual named Dennis Hoherz. Hoherz owned the land but had engaged in a series of borrowing transactions with the Debtors and others. Commencing in 1962 Hoherz executed a series of promissory notes in favor of FmHA, the latest being given in 1981. All were secured by mortgages upon the real estate described as follows:

Township 139 North, Range 85 West of the 5th P.M. Section 6: W1/2; Township 139 North, Range 86 West of the 5th P.M. Section 1: N1/2 SE1/4; Township 140 North, Range 86 West of the 5th P.M. Section 36: W1/2 SE 1/4.

On January 5, 1981, Hoherz borrowed $22,500.00 in operating funds from the Debtors and gave them a mortgage dated February 28, 1981, which was free of all encumbrances except the first mortgage to FmHA. Hoherz failed to make payments on the operating loan and in consequence, gave the Debtors a quit claim deed dated May 11, 1983. On the strength of this quit claim deed the Debtors moved onto the land. However, they made no payments to FmHA and never assumed the FmHA mortgage. In 1992 FmHA commenced foreclosure of its mortgages against all persons claiming an interest, including the Debtors. On May 28, 1992, the United States District Court for the District of North Dakota entered a judgment of foreclosure in favor of FmHA specifically finding FmHA to have a valid first, second, third, fourth, fifth, sixth, and seventh valid and subsisting lien on the property with priority over all other interests including the mortgage and quit claim deed held by the Debtors. *United States v. Hoherz*, Civ. No. A1–91–212 (D.N.D.1992). The Debtors were held to have no further interests in the land save for a right of redemption which commenced to run 60 days from the date of the foreclosure sale. Their bankruptcy petition was filed on July 17, 1992, and lists FmHA as the only secured creditor. The plan purports to treat FmHA as a secured creditor, recognizing its outstanding claim to be $106,170.00 which the Debtors believe to be the fair market value of the land although no formal appraisals were done. They intend to pay this amount over 35 years at 8% interest. It is the Debtors' hope, that coupled with the cash rent of $10,000.00 from 400 of the 463 acres, and their off-farm income of about $2,000.00 per month that they will be able to begin raising either sheep or feeder calves—which ever is more profitable. Despite past unemployment, Glen hopes his carpentry income will be $16,000.00 to $17,000.00 per year. As for acquisition of the necessary animals, the Debtors have been unsuccessful in lining up any financing for them and the plan itself provides no means for their purchase.

FmHA strongly objects to the plan noting first of all, aside from any question of feasibility, that the plan purports to treat FmHA as a creditor when in fact FmHA has no claim at all against the Debtors. FmHA also raises issue with the value placed on its claim and the interest rate provided.

The critical issue, and the one upon which the Debtors' efforts to reorganize

fundamentally turns, is whether the 463 acres can be included as estate property and FmHA's priority position modified as proposed in the plan. The United States District Court in its judgment found the Debtors, their mortgage and quit claim deed notwithstanding, to have no greater interest than that of potential redemptors.

■ This result is correct since a distinguishing attribute of a quit claim deed is that it only conveys the interest of the grantor in the property, rather than the property itself. *Gilbertson v. Gilbertson,* 452 N.W.2d 79 (N.D.1990); *Gajewski v. Bratcher,* 221 N.W.2d 614 (N.D.1974); *Bilby v. Wire,* 77 N.W.2d 882 (N.D.1956). To determine what interest in the farm property passed to Glen by virtue of the quit claim deed, the court looks to the chain of title prior to the transfer of the deed to determine what interest Dennis Hoherz had to convey. *See,* 23 Am.Jur.2d *Deeds* § 339 (1983). Simply put, Glen cannot acquire more interest than what Dennis had. At the time of the conveyance by the quit claim deed, Dennis' interest in the farm property was subject to the various liens held by FmHA. Accordingly, Glen's interest in the farm property is also subject to the liens held by FmHA, thereby making Glen's interest subordinate to FmHA's mortgages.

As so noted in the foreclosure judgment, the Debtors' only interest in the farm property at this juncture is the right of redemption. Under section 541(a)(1) of the Bankruptcy Code, this right of redemption comes within the scope of all legal or equitable interests of the Debtors. Thus it is only the Debtors' right of redemption and not the property itself that can be considered an asset of the bankruptcy estate. *See, In re Maanum,* 828 F.2d 459 (8th Cir.1987); *Johnson v. First Nat'l Bank of Montevideo, Minn.,* 719 F.2d 270 (8th Cir. 1983). Upon the foreclosure sale of the farm property, it must be recognized that the property involved in the sale is not itself an asset of the estate. It is the right of redemption that is an asset which passes to the trustee or in this case to the Debtors if the redemption period has not expired as of the date of the petition filing. The purchaser of the farm property at the sale is the one who acquires a vested right to become the absolute owner upon the expiration of the redemption period. Thus, the only options available to the Debtors are to either become the purchasers of the farm property at the foreclosure sale or pay off the purchaser within sixty days of the sale. Failing to fulfill either options will leave the Debtors with absolutely no interest in the farm property.

■ Without the land, the court believes any possibility of a confirmation is significantly reduced since the Debtors' desire to raise and sell sheep will be unduly speculative. Moreover, the Debtors do not appear to have sufficient funds in which to purchase the sheep since at the time of filing, they listed only $70.00 as cash on hand nor have they established any certainty of stable future income. The proposed plan also fails to disclose the means by which financing of the sheep purchase would occur. Glen's intention to use the income derived from land rental to buy several hundred head of sheep is also speculative in light of the fact that FmHA has several mortgages attached to the farm property and has already received a foreclosure judgment on the property. Essential to any confirmation is the requirement that the debtor be able to make all payments under the plan. 11 U.S.C. § 1225(a)(6). In a word, the Debtors must be able to show that the proposed reorganization is feasible. A debtor thus must prove that the proposal is both realistic and will cash flow. *In re Dittmer,* 82 B.R. 1019, 1022 (Bankr.D.N.D.1988). As set forth in the Eighth Circuit case of *In re Clarkson,* 767 F.2d 417 (8th Cir.1985), plan feasibility contemplates:

"The probability of actual performance of the provisions of the plan. Sincerity, honesty and willingness are not sufficient to make the plan feasible and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."

**154**

767 F.2d at 420.

The income that would be necessary not only to fund the plan as presently crafted but also to undertake the livestock arrangement proposed are not based upon any reliable income projections. In fact, the Debtors' future income and expense projections are inconsistent with past performance to a point where they are unreliable. From the schedules, the proposed plan and the information provided at the hearing, the court would conclude, on the issue of feasibility, that the Debtors have failed to sustain their burden of proof.

Accordingly, for the foregoing reasons, it is ORDERED that the confirmation of Glen and Diane Kuether's proposed Chapter 12 plan be DENIED since they do not have an interest in the farm property itself and only have a right of redemption. Furthermore, the court questions the Kuether's ability to finance their sheep purchase at this juncture.

**SO ORDERED.**