Patton v. Smith.

PATTON v. SMITH et al., Appellants.

Division One, December 24, 1902.

1. **Ejectment:** LIMITATIONS: DIVIDING LINE. Where the holders of deeds calling for land according to the Government survey, not knowing exactly where the dividing line between their lands is, employed a surveyor to point out to them the true line, and when he gave them a line each thought was the true line, though in fact it was not, and each took possession of the part on his side of such line, believing he was getting only his own land, and without any intention by either of claiming anything that belonged to the other, the defendant can not make the claim of adverse possession relate back to the time when the line was located, for two reasons: first, because after that time one of the owners became for a few years the owner of both tracts, and to so hold would make him during those years claim by adverse possession against himself; second, these facts did not amount to an agreement to fix an arbitrary or agreed line, with the intention of claiming to that line, with total disregard thereafter of what the true line was.

2. ————: ————: ADVERSE POSSESSION. One's possession must be adverse before it can be made the basis of title by limitation.

3. ———: ———: ———: DIVIDING LINE: COMMON OWNER OF BOTH TRACTS. It matters not what may have been the understanding or intention of that one of two adjoining owners of land on whose side a strip fell because of the erroneous location of the dividing line by a surveyor, if afterwards the other became the owner of both tracts, and announced that it was for that reason immaterial where the dividing line was, for thereafter he did not as the owner of one tract claim adversely to himself as the owner of the other, and neither could his heirs do so, so long as they remained the owners of both tracts. And unless defendant has ten years adverse possession without counting the time both tracts were so held by him and his heirs, defendant has not acquired title by limitations.

4. ———: ———: ———: ———: ———: ABANDONMENT. When one of the owners of two adjoining tracts of land becomes the owner of the other also, he wipes out and abandons any agreed dividing line between them. And if his heirs sell to the dividing section line they do not sell to the agreed line, but to the true line.

5. ———: AGREED LINE. Where two adjoining owners, endeavoring to ascertain and conform to the true dividing line between them, employ a surveyor to locate that line, but instead he locates an erroneous line, it can not be said that this erroneous line is an agreed line.

6. ———: ———: ESTOPPEL. Conforming to an erroneous line while in good faith believing it to be the true line and intending to claim only to the true line does not estop the adjoining owner, however long the possession of the other may be, from claiming to the true line when it is ascertained.

Appeal from Ray Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED.

*Black & DeMasters* and *Tapley & Fitzgerrell* for appellants.

(1) The line run by Banister in 1882 was an agreed line, as Kennedy at that time owned appellants' and Remelius owned respondent's land, and both agreed on and employed Banister to survey and locate the line between the two tracts; and immediately after the line was located by Banister, both Kennedy and Remelius built the division fence thereon, Kennedy one-half and

Remelius the other half, and from 1882 to 1898 there was no question raised about the line, but same was conceded to be the true, correct and agreed line. Respondent, as the grantee of Remelius, is bound by the agreements made and entered into by him.    Blair v. Smith, 16 Mo. 273; Majors v. Rice, 57 Mo. 384; Turner v. Baker, 64 Mo. 218; Acton v. Dooley, 74 Mo. 63; Jacobs v. Moseley, 91 Mo. 457; Schad v. Sharp, 95 Mo. 573; Atkinson v. Pease, 96 Mo. 566; Krider v. Milner, 99 Mo. 145; Smith v. McCorkle, 105 Mo. 135.    (2) Acquiescence in an agreed line for more than ten years is binding on the parties and their grantors.    Lindell v. McLaughlin, 30 Mo. 28; Coleman v. Drane, 116 Mo. 387; Jackson v. Smith, 9 John. 100.

*Lavelock & Kirkpatrick* for respondent.

(1)    The evidence in this case does not sustain the special defense of title by adverse possession as pleaded.    Before one can acquire title by limitation, at least without color of title, his adverse possession must be actual, hostile, notorious, exclusive and continuous for ten years under a claim of right.    Sedgwick & Wait on Land Titles, secs. 729, 737, 740, 752; 3 Kerr on Real Property, sec. 2273, p. 2296; 1 Am. and Eng. Ency. of Law  (2 Ed.), pp. 834-5; 2 Wood on Limitations (2 Ed.), sec. 269, p. 684; Wilkerson v. Eilers, 114 Mo. 254; Adkins v. Tomlinson, 121 Mo. 494; Ivy v. Yancey, 129 Mo. 508; Baber v. Henderson, 156 Mo. 573.    (2)  The evidence would not have justified the trial court in finding that Remelius and Kennedy agreed to permanently fix the boundary line dividing the northwest and the southwest quarters of said section seventeen on the Banister survey.    The burden of proof devolved on defendants to establish this.    The fact that Remelius and Kennedy at the time accepted said surveyed line as correct, believing it to be the true line dividing said quarters, would not preclude the grantees of either from claiming to the true line when subsequently ascertained, unless such survey had been

acquiesced in for a length of time sufficiently long to warrant the presumption that said survey had been agreed upon as permanently fixing said boundary line. There is no presumption of surrender or waiver of rights under misapprehension; particularly, when the surveyed line is believed to be the true line and neither claims beyond the true line.   1 Jones on Real Prop. and Con. secs. 366-7; 4 Am. and Eng. Ency. of Law (2 Ed.), pp. 862-3; Knowlton v. Smith, 36 Mo. 513; Kincaid v. Dormey, 51 Mo. 553; McWilliams v. Samuel, 123 Mo. 662; Brummell v. Harris, 162 Mo. 404; Perkins v. Gay, 3 S. & R. (Pa.) 327; Brewer v. Railroad, 5 Meb. (Mass.) 478; Sanford v. McDonald, 53 Hun 263; Schraeder v. Packer, 129 U. S. 700; Hatfield v. Workman, 35 W. Va. 578; Davis v. Russell, 142 Pa. St. 426; Crawford v. Ahrnes, 103 Mo. 94; Finch v. Ullman, 105 Mo. 264.

MARSHALL, J.—Ejectment to recover a strip of land, 73 feet wide at the west end and 45 feet wide on the east end, and 50⅛ rods in length, off of the south end of the east half of the northwest quarter of section 17, in township 52, range 27, in Ray County. The action was begun September 6, 1899.   The petition is in the usual form and lays ouster as of March 1, 1896. The answer is a general denial, with a special plea of the statute of limitations.   The following diagram shows the status of the *res* and the respective holdings of the parties:

Patton v. Smith.

In 1882 Remelius owned the eighty-acre tract, and one Samuel Kennedy owned the fifty-two-acre tract. They did not know the exact location of the dividing survey line between their lands, so they employed one Banister, the county surveyor, to locate the said survey line. Banister gave them a line as the true survey line and they jointly built a dividing fence on that line, believing that it was the true dividing line, and they each occupied the land up to the fence, until the happening of the subsequent events hereinafter set out. Thereafter on August 24, 1882, Kennedy mortgaged the fifty-two-acre tract, and on October 26, 1883, the mortgage was foreclosed, and Remelius became the purchaser of the land, and continued to own it until his death in 1888 or 1889. After his death, to-wit, on August 10, 1891, his heirs sold this fifty-two-acre tract to the defendant Smith. On March 17, 1885, Remelius mortgaged the eighty-acre tract, but Remelius remained in possession of the land until his death, and the mortgage was not forclosed until January 6, 1890, when the plaintiff became the purchaser. All these mortgages and deeds described the survey line as the true dividing line.

The respective parties, therefore, have record title to adjoining lands that are separated by the dividing survey line between the northwest and the southwest quarter of section seventeen. The defendant is in possession of so much of the land so conveyed to the plaintiff as lies between the said dividing line, and the waving line shown on the diagram and marked at east end thereof as "Ditch." Therefore, the plaintiff is entitled to recover the possession of that land, unless the defendant has sustained one or the other or both of his defenses, which are, first, title by limitation, and second, title by the establishment of an agreed dividing line, located at the waving line, and seventy-three feet north of the survey line dividing the quarter sections.

At the request of the defendants the court made the following special finding of facts:

"The court on the evidence introduced at the trial

of this cause makes the following finding and conclus-
ions of facts:

"1.   Plaintiff is the owner in fee of the east half.
of northwest half of section 17, township 52, range 27,
in Ray county, holding the record title thereto, pur-
chased January 6, 1890, deed recorded January 31,
1890.

"2.   Defendant Smith is the record owner in fee
of fifty-two acres off of the west side of east half of
southwest quarter of section 17, township 52, range 27,
in Ray county, and defendant Blackwell is his tenant.

"3.   Defendant Smith through his tenant is in
possession of the strip of ground in dispute, and has
been in the open, notorious, exclusive, continuous and
adverse possession thereof under claim of ownership
since the date of his purchase, August 10, 1891, his deed
being recorded on same date.

"4.   Frank Remelius purchased the east half of
northwest quarter of section 17, township 52, range
27, January 16, 1875; on March 17, 1885, said Remelius
and wife executed a trust deed thereon to secure the
payment of a note therein described; the deed of trust
was recorded the following day; January 6, 1890, the
land was sold by the trustee named in the deed of trust
for default of payment of the debt thereby secured, and
plaintiff was the purchaser.

"5.   Samuel Kennedy purchased the fifty-two-acre
tract November 12, 1881, deed recorded November 26,
1881; on August 24, 1882, said Kennedy executed a deed
of trust thereon to secure the payment of certain indebt-
edness therein mentioned, and on October 26, 1883, for
default of payment, the trustee named sold said land,
pursuant to the terms of said deed of trust, to said
Frank Remelius, the deed being recorded November
3, 1883.

"6.   Remelius continued the owner, and in exclus-
ive possession of both of said tracts, from the date of
his respective purchases until his death in the latter
part of 1888 or early part of 1889, and his widow and
heirs owned and were in possession of same until sold,

to-wit, the eighty-acre tract, January 6, 1890, to plaintiff, and the fifty-two-acre tract August 10, 1891, to defendant Smith.

"7.   In 1882, the division fence between these two tracts was out of repair, and Remelius and Kennedy, desiring to erect a new one and not knowing the location of their boundary line, employed John T. Banister, the county surveyor of this (Ray) county, to survey and locate the same, and soon after the survey was made, they, supposing the line—the true line—to have been correctly located between the northwest and southwest quarters of said section and relying on said survey as correct, erected a substantial division fence, on or practically on, the line as located by said Banister.   The Banister survey was never recorded, and by reason of the removal of said division fence erected by Remelius and Kennedy, on account of the opening or attempted opening of a public road between these two quarter sections, the location of said fence was somewhat indefinite, and in August, 1899, plaintiff caused the line to be run and located by S. L. Bay, present county surveyor, who ascertained that the true line dividing said quarter sections lay some seventy-three feet further south at the west side of said fifty-two-acre tract and about forty-five feet further south at the east side thereof.

"8.   The Bay survey was the only record evidence of the true location, or the true line between these two quarter sections.   All the deeds of trust affecting the eighty-acre tract belonging to plaintiff describe it as the east half of northwest quarter, and those affecting the defendant's tract described it as fifty-two acres off of the west side of east half of southwest quarter.

"9.   Defendant Smith was informed at the time of his purchase, by one of the Remelius heirs, that the fence was on the line, and he bought believing that all the land that lay south of this fence was a part of the tract of land described in his deed and bought by him and he claimed it as such.

"10.   This suit was commenced September 6, 1899."

To the action of the court in making such finding, defendant by his counsel then and there excepted at the time.

There were no instructions asked on either side, and no conclusions of law specially stated by the court. There was a judgment for the plaintiff and defendants appeal.

I.

The defendant claims title, by limitation, to the land in suit.    The title of both the parties hereto emanates from Remelius — the plaintiff's title through the foreclosure of a deed of trust made by Remelius on March 17, 1885, and foreclosed on January 6, 1890, after the death of Remelius.   And the defendants' title comes from the heirs of Remelius by deed dated August 10, 1891.   Remelius acquired the eighty-acre tract on January 16, 1875, and he had the possession thereof continuously until his death in 1888 or 1889, except as to the part here in dispute, which was in possession of Kennedy from 1882, when Banister located the survey line, until October 26, 1883, when Remelius became the purchaser of the Kennedy fifty-two acres at the foreclosure sale under the mortgage, and after that time Remelius was in the possession of both tracts until his death, and his heirs were in possession of both tracts until the plaintiff purchased the eighty-acre tract at the foreclosure of the mortgage on January 6, 1890, and until they sold the fifty-two-acre tract to the defendant Smith on August 10, 1891.   This suit was begun September 6, 1899.   So that the defendant had been in possession of the land in controversy only from August 10, 1891, to September 6, 1899, when suit was brought. This was not ten years, and, therefore, the defendant has no title by limitation, unless the defendant can relate a claim of adverse possession back to 1882, when Banister made the survey.   To do this the defendant must claim that while Remelius and his heirs owned both tracts from 1883 to 1891, they claimed this land

by adverse possession against themselves and thereby kept the statute of limitations running. They must also claim that from 1882 to 1883 Kennedy claimed adverse possession of this land. So far as Kennedy was concerned, there was no attempt to acquire title to this land by adverse possession. Neither he nor Remelius knew the exact location of the survey line. They did not get together and agree upon an arbitrary line established by themselves nor for them, as the dividing line between their property. They each had record title to adjoining land that was separated by a survey line. They sought the truth as to where that survey line was. They naturally employed the aid of the county surveyor. Not, however, to settle any dispute between them by establishing for them an arbitrary line to which they would agree, but to find for them and point out to them the true survey line. When that line was ascertained their deeds settled all question between them. No agreement *inter partes* as to the division line was intended or necessary. The legal conclusion followed necessarily from the premises. They had the major premise, in the shape of the calls in their deeds for the survey line. They only needed the minor premise, to-wit, the exact location of the survey line. This is what they employed Banister to ascertain. When he gave them a line each thought it was the true line—the survey line—and each took possession of the part on his side of such line, believing he was getting only his own land, and claiming to the given line only because each believed it was the true line, and without any intention of claiming anything that belonged to the other, and without any idea of acquiring by limitation any part of the land of the other. That this is true is conclusively shown by the fact that both Kennedy and Remelius afterwards mortgaged their respective lands, and each described his land according to the survey line and neither referred to any agreed line between their respective property. So that even if the defendant has held possession of this land and claimed to the fence and not to the survey line, with-

out regard to which is the true line, from 1891 to 1899, he has shown adverse possession for only eight years in himself. · From 1882 to 1883, Kennedy did not hold adversely, but only as claiming to the line all parties believed was the true line, but which it now turns out was not the true line.   So even if the defendant could tack his eight years' possession to Kennedy's possession for about eighteen months, that would not make a good title in the defendant, because, first, it would only amount to possession for nine years and a half; and, second, Kennedy's possession was *not* adverse.

But in addition to all this, there is one fact in this case that completely dispels all shadow of title by limitation in the defendant, to-wit:   In 1883 Remelius became the owner of both tracts, and the evidence shows that when some question arose thereafter as to the location of the survey line, he said it made no difference, inasmuch as he owned all the land on both sides of the line, wherever it might be.   So that even if the possession of Kennedy had been hostile to Remelius, and even if Kennedy had intended to claim to the line established as the survey line by Banister, without regard to whether that was the true line or not, and even if Kennedy and Remelius had agreed upon the line established by Banister, nevertheless when Remelius became the owner of both tracts of land, all such questions became immaterial; there was no adverse holding thereafter by Remelius as the owner of one tract against himself as the owner of the other tract, and there was no longer any question of any agreed line dividing the two tracts. For as Remelius said those matters had become immaterial by reason of his ownership of both tracts.   And so the matter remained for the five or six years that Remelius lived after he became the owner of both tracts, and so they remained during all the time his heirs owned the land.

It is important now to inquire by what right or authority the defendant claims the benefit of an agreed line instead of the survey line.   The defendant pur-

chased from the heirs of Remelius.   His deed calls for
the survey line and not any agreed line.   The descrip-
tion in his deed is for fifty-two acres off of the west side
of the east half of the southwest quarter of section seven-
teen.   This gave the defendant record title only to
the land lying south of the dividing survey line between
the west side of the east half of the southwest quarter
of section seventeen, and the land lying north thereof,
to-wit, the west half of the northwest quarter of that
section.

This is what the defendant got and paid for, and the
land he now claims in this suit is additional to the land
he got and paid for.   When Remelius became the
owner of both tracts he wiped out and abandoned any
agreed dividing line if there ever was one.   [Brum-
mell v. Harris, 162 Mo. 1. c. 405.]   When his heirs
sold to the defendant they sold only to the dividing sec-
tion line.   So that there was no agreed line in exist-
ence when the defendant acquired his land.   If there
had ever been such an agreed line it was eliminated
when Remelius became the owner of both tracts.   But
neither the findings of facts by the court, nor the evi-
dence preserved by this record, even if this court would
review the findings of fact in this action at law, furnish
any support for the contention that there ever was any
agreed line.   This being true, there was never adverse
possession of the land in suit as between Kennedy and
Remelius; there could be no adverse possession while
Remelius and his heirs owned both tracts, and the de-
fendant has only shown eight years' adverse possession,
which is not sufficient to create title by limitation in
the defendant.

## II.

Has the defendant a right to the possession of the
land in suit because it is within his boundaries by virtue
of an agreed line?

The rules of law applicable to controversies over

dividing lines, and agreed lines, and the character and length of possession necessary under such claims, have been so lately and so fully settled by this court that it is necessary to do no more than to refer to the cases, an examination of which will furnish a solution for most, if not all of such questions. [Schad v. Sharp, 95 Mo. 573; Hedges v. Pollard, 149 Mo. l. c. 222; Brummell v. Harris, 148 Mo. l. c. 443; McCabe v. Bruere, 153 Mo. l. c. 5; Brummell v. Harris, 162 Mo. l. c. 404.]

·    As hereinbefore shown in the first paragraph hereof, there never was any agreed line by the. plaintiff with any one else, nor by any person with whom the plaintiff stands in privity, nor in fact by any one. The line established by Banister was not an agreed line. It was an attempt by him to locate the survey line. . The line he ran was an erroneous line. Both Kennedy and Remelius were endeavoring to ascertain and conform to the true lines, and all they did was with that intention alone. Conforming to an erroneous line while in good faith believing it to be the true line and intending to claim only to the true line, estops no man from claiming to the true line whenever it is afterwards ascertained. [4 Am. and Eng. Ency. Law (2 Ed.), p. 872; 1 Jones on Real Prop., sec. 356; Knowlton v. Smith, 36 Mo. l. c. 513; Kincaid v. Dorney, 51 Mo. l. c. 553; Schad v. Sharp, 95 Mo. l. c. 579; Hedges v. Pollard, 149 Mo. l. c. 223; Brummell v. Harris, 148 Mo. l. c. 443; McCabe v. Bruere, 153 Mo. l. c. 5.]

For these reasons it follows that the defendant has shown no agreed line in this case, but on the contrary has shown only an endeavor of adjoining owners to ascertain and conform to the survey line. And, furthermore, the plaintiff has failed to show any right or privity in himself to assert a claim based upon an agreed line, for his deed limits him to the survey line, and gives him no other right whatever.

The result is the judgment of the circuit court is right and it is affirmed. All concur.