Walter BROOKS, Plaintiff-Appellant,

v.

E. C. BOGART et al.,
Defendants-Appellees.

No. 9087.

Supreme Court of North Dakota.

June 23, 1975.

Wilson & Boyum, Bowbells, for plaintiff-appellant, argued by Arne F. Boyum, Bowbells.

Funke & Eaton, Minot, for defendants-appellees, argued by Nevin Van de Streek, Minot.

SAND, Judge.

This is an appeal by plaintiff, Brooks, from a judgment of the Burke County District Court quieting title and declaring rights in real property.

The plaintiff below, Walter Brooks, brought this action in the Burke County District Court pursuant to Chapter 32–17, North Dakota Century Code, for the purpose of determining adverse claims to approximately seventy-five acres of real property, more particularly described as:

The Southeast Quarter of the Southwest Quarter (SE–¼ SW–¼) and Lot Four (4) of Section Nineteen (19), Township One Hundred Fifty-nine (159), North, Range Ninety-one (91) West, Burke County, North Dakota.

The abstract of title entered into evidence at the time of trial shows that record title to the property in question is in the name of John Coulton via a patent issued to him by the United States Government in 1921.

The following undisputed facts regarding the land were developed through testimony at trial:

—The land in question is well-nigh untillable and consists essentially of two big hills with a gravel flat in the center.

—John Coulton, the record title owner, and his wife, Kristine, left North Dakota some time shortly after 1921 and went to the State of Washington. After their departure from North Dakota, the land in question was rented and used for pasturage by the father of Clarence Tinjum. From about 1935 until the commencement of this action in 1972, said Clarence Tinjum (who owns the land on three sides of the property in question) rented the property in question for pasturage. Both Tinjum and his father made yearly rental payments for the property in question to Kristine [Peterson] Coulton until her death in 1945, after which they made such annual rental payments to plaintiff's wife, Clara Peterson Brooks (Kristine's daughter by her first marriage) until Clara's death in 1972.[1]

—From at least 1951 until 1972, the plaintiff, Walter Brooks, paid the taxes on the property.

---

1. The genealogical chart below (with appropriate comments necessary for understanding thereof) will be of some assistance to the reader in understanding this case:

Based upon these facts, the plaintiff, Walter Brooks, sought to show at time of trial that he had acquired sole title to the property through adverse possession thereof for a period of twenty years.[2]

The trial court, in its findings of fact, found that John Coulton was the owner of the property; that at the time of his death intestate in 1943, the property devolved pursuant to the applicable North Dakota laws of intestate succession [Section 56–01–04(1)(a), N.D.R.C.1943] in equal shares to his wife, Kristine, and to the six children[3] of his deceased daughter, Mae Coulton Clementich; that, upon the death intestate of Kristine in 1945, her one-half of the property, pursuant to Section 56–01–04(1)(c), N.D.R.C.1943, vested in her daughter, Clara Peterson Brooks, the plaintiff's (Walter Brooks') wife; and, that upon the death intestate of Clara in 1972, her one-half interest in the property went in equal shares [Section 56–01–04(1)(a), N.D.C.C.] to the plaintiff, Walter Brooks, and to Gerald Bogart,[4] Clara's son by a previous marriage.

The trial court further found that the evidence of adverse possession on behalf of the plaintiff, Walter Brooks, was insufficient to sustain the claim of adverse possession under the statute.

■ From this judgment the plaintiff, Brooks, appeals. He asserts as issues on appeal[5] that the trial court erred in four respects, in that:

1. Its (the trial court's) finding that John Coulton was the owner of the property through the patent from the United States government is clearly erroneous.

2. Its finding that the evidence was insufficient to support Brooks' contention that the possession for the prescriptive period was adverse is clearly erroneous.[6]

3. Its finding that the plaintiff, Walter Brooks, did not show adverse possession as against his wife, Clara, is clearly erroneous.

4. It applied the wrong law, (i. e., Section 56–01–04, N.D.C.C.) in determining succession to the estate of John Coulton because the facts showed that Chapter 30–17, N.D.R.C.1943 (dealing with the summary administration of small estates) should have been applied by the trial court.

## OWNERSHIP BY PATENT

■ Plaintiff, Walter Brooks, asserts that the legal title that John Coulton received in the property through a United States government patent issued to him in 1921 was a bare legal title and that, in fact, his wife, Kristine, was the equitable owner of the property. Plaintiff therefore asks this court to hold that the trial court's

2. Pursuant to Section 28–01–07, N.D.C.C.

3. Thus the trial court found that each of the six Clementich children received through intestate succession a one-twelfth share of the property.

4. Thus the plaintiff, Brooks, and Bogart, each succeeded to a one-fourth interest in the property.

5. Although the plaintiff, in his appellate brief, phrased his issues dealing with the trial court's finding of fact in a way differing from those issues as set forth herein, we have held in several cases that our review of the findings of fact of the trial court is limited to a determination as to whether they are clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P.; hence, our rephrasing of those issues comports more nearly with our standard of review. For a discussion of the "clearly erroneous" rule see Jahner v. Jacob (N.D.1975).

6. This finding dealt only with the question of adverse possession as against the six Clementich defendants for the obvious reason that the defendant, Gerald Bogart, obtained no interest in the property until after the death of his mother, the plaintiff's wife, in 1972. The six Clementich defendants filed an answer in this quiet title action and Gerald Bogart, although he did not file an answer, was treated by the trial court as if he had filed an answer due to the plaintiff's voluntary admission that it was Gerald Bogart who originally approached the plaintiff's attorney concerning the initiation of the quiet title action which resulted. All other defendants failed to file answer and the trial court, based upon the evidence adduced at trial, properly found that none of the defaulting defendants had any interest in the property in question.

finding that John Coulton was the sole owner of said property (and thus, implicitly, that no such trust relationship arose which required enforcement thereof through the utilization of the equity powers of the trial court) is clearly erroneous.

A review of the record in this case reveals that the evidence which might tend to support such a bifurcation of legal and equitable ownership between John and Kristine Coulton consists of the following:

1. Testimony that Kristine and her first husband, Lars Peterson, began homesteading the land and lived thereon prior to Lars' death and Kristine's subsequent marriage to John Coulton.

2. A plat of Vanville Township, Burke County, North Dakota, contained in a 1914 volume entitled the "Standard Atlas of Burke County, North Dakota," which volume was compiled and published by Geo. A. Ogle and Co., Chicago, Illinois, in which the name "Christine (*sic*) Peterson" was imposed over that portion of the plat representing the property in question.

3. Testimony that Clarence Tinjum's father and, later, Clarence Tinjum, paid annual rent for the property by check to Kristine Coulton until her death.

The purport of this evidence and the inferences which might be drawn therefrom fall far short of any standard which might be necessary to support the imposition of a trust relationship as advocated by the plaintiff, Brooks, especially in light of the fact that the inferences favorable to the plaintiff which can be drawn from this evidence, without more, do not tend to establish Brooks' contention as, in some way, preponderating over the inference that the evidence adduced is merely indicia of actions with no intendment behind them except the normal functioning of a marital household and the marital partners therein.

We hold that the trial court's finding in this matter is not clearly erroneous.

## POSSESSION AS ADVERSE

The plaintiff, Brooks, claims that he acquired prescriptive title to the property in question by adverse possession thereof pursuant to Section 28–01–07, N.D.C.C., which provides as follows:

"In every action for the recovery of real property or for the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law, and the occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action."

A relevant statute regarding the nature of the adverse possession required is Section 28–01–11, N.D.C.C., which provides as follows:

"For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument nor upon a judgment or decree, land shall be deemed to have been possessed and occupied only in the following cases:

"1. When it has been protected by a substantial inclosure; or

"2. When it has been usually cultivated or improved."

As shown by Section 28–01–07, N.D.C.C., the burden of proving adverse possession under that statute is on the person alleging such adverse possession. Further, in Odegaard v. Craig, 171 N.W.2d 133 (N.D. 1969), we noted that the adverse possessor must meet the burden of proof required of him by clear and convincing evidence.

The evidence which might support a finding of adverse possession pursuant to Section 28–01–07, N.D.C.C., in the instant case is as follows:

1. Brooks and his wife received the annual rent checks from Clarence Tinjum dur-

ing the period from 1951 until 1972 when Tinjum rented the land for pasturage.

2. Tinjum fenced the property on three sides to separate it from his property which bordered the property in question on those three sides. Tinjum also fenced the property on the fourth side during a period when he rented the land bordering that fourth side.

3. The plaintiff, Brooks, paid the taxes on the property during the twenty-year period during which he alleges adverse possession as against the defendant.

4. In 1952, the plaintiff, Brooks, told the defendants' father, Joe Clementich, that he (the plaintiff) had been paying the taxes on the property and that plaintiff Brooks and his wife were going to try to get things cleared up so they could dispose of the property.

Evidence (or lack thereof) which tends to show that no adverse possession subsisted as against the Clementich defendants during the statutory period was as follows:

1. There is no evidence from which one can infer that Clarence Tinjum's fencing of the property in question can, in fact, be ascribed to his landlords as actions of their tenant rather than the actions of an adjacent landowner.

2. No evidence exists that improvements were made on the land in question by the plaintiff or by his tenant acting in his behalf. In fact, there is no evidence that there were any improvements upon the land whatsoever.

3. No evidence was available at trial from which one could infer that the plaintiff had notified the defendants directly of his intent to hold the property in hostility to their interests.[7]

4. The trial court determined[8] that the property passed by intestate succession pursuant to Chapter 56-01, N.D.C.C. (as op-

posed to Chapter 30-17, N.D.C.C., or N.D.R. C.1943), therefore the plaintiff's wife held as a tenant-in-common with the defendants during the statutory period. Ellison v. Strandback, 62 N.W.2d 95 (N.D.1953).

In the *Ellison* case, we pointed out in syllabus 6 that:

"Before possession of real property by one cotenant can become adverse to the others, the cotenant in possession must give notice to the other cotenants either directly or by a course of conduct in direct hostility to their claims so as to show an ouster of the rights of such cotenants."

Based upon a review of the evidence adduced at trial (as summarized above), we hold that the trial court's finding that the adverse possession alleged by the plaintiff as against the defendants never appertained is not clearly erroneous.

## ADVERSE POSSESSION AGAINST WIFE

This action was instituted in the same year, but after the death of plaintiff wife, Clara, in 1972. As pointed out above, the trial court found that her one-half interest in the property in question devolved equally according to the laws of intestate succession to her plaintiff husband and to her son by her first marriage, Gerald Bogart.

Plaintiff, in his appellate brief, quotes 3 Am.Jur.2d, Adverse Possession, § 58, page 147, as follows:

"Where the successive possessions of those in privity with each other, when tacked together, constitute one continuous adverse possession for the statutory period, it will be sufficient, provided, of course, the other elements of adverse possession are also present."

This statement or principle of law has no application to the instant case. The appel-

7. Direct notice is not necessary if there is a course of conduct in direct hostility. See Ellison v. Strandback, 62 N.W.2d 95 (N.D. 1953), syllabus paragraph 6, quoted *infra.*

8. And we hold that the trial court's determination was correct, see *infra.*

lant, Brooks, cannot consistently claim privity and hostile holding at the same time with the same party.

■ The plaintiff also argues that proof of adverse possession against the deceased wife should not be required to support a claim of title to the entire estate.[9] We have earlier herein held that the trial court's finding of no adverse possession against the Clementich defendants was not clearly erroneous; therefore, the encyclopedia quotation, *supra*, is rendered irrelevant, if it was not already so. Such is dispositive of the issue in light of the evidence.

## SUMMARY ADMINISTRATION

Lastly, the plaintiff asserts that the trial court, in determining the intestate succession to the North Dakota estate of John Coulton after his death in 1943, erred when it relied on Chapter 56–01, North Dakota Revised Code of 1943, as determinative in the matter, because Chapter 30–17, N.D.R.C.1943, was the applicable law under the circumstances.[10]

■ We disagree. It is settled law that the real property in an intestate's estate devolves to the heirs according to the intestate succession statutes immediately upon the intestate's death. Section 30–17–01, N.D.R.C.1943, provides as follows:

"There may be a summary administration of the estate of a deceased person as provided in this chapter, if:

"1. Upon the return of the inventory of the estate of a deceased person it appears that:

"a. The value of the whole estate does not exceed the sum of fifteen hundred dollars; and

"b. There is a surviving husband or wife or minor child or children of the deceased; or

"2. A petition for summary administration is filed as provided in section 30–17–02."

■ This statute makes it plain that the probate court does not sua sponte apply or put into effect the summary administration permitted by Chapter 30–17, N.D.R.C. 1943, unless the statutory prerequisites are first met by either the filing of a probate inventory return showing qualifications for summary administration (which implies probate proceedings have been initiated) or the filing of a petition for summary administration. The plaintiff in the instant case attempted neither. In any event, he is not now in a position to claim the privilege of summary administration and the benefits therefrom which might have accrued to him if summary administration would have been permitted had he pursued the matter in the fashion required by statute.

The decision of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.

---

9. Properly, this issue is not before this court due to the fact that it was not raised in the trial court (Odegaard v. Craig, 171 N.W.2d 133 (N.D.1969)) and, in fact, could not have been raised in the trial court due to the fact that the plaintiff failed to join his wife's estate as a defendant. The question of whether one can adversely possess as against his spouse is thus not really in issue.

10. Plaintiff failed to point out to the court below that he was relying on the fact of devolution of John Coulton's estate through the application of Chapter 30–17, N.D.R.C.

1943. Thus plaintiff made no attempt to show that the value of John Coulton's estate fell within the allowable parameters prerequisite before that chapter may be relied upon by the probate court for distribution of the estate. It is apparent that the utilization of Chapter 30–17 in re the distribution of Coulton's estate apparently came to plaintiff as an afterthought, because on this appeal he has relied on the amount of the annual rental payments for the property in question as the sole indicium for the value of Coulton's estate.