Robin H. ARNOLD,[1] Plaintiff-Appellant,

v.

John C. ROBBINS, Jr. and Linda Robbins, Defendants-Respondents.

Court of Appeals

*No. 96–0570. Submitted on briefs December 12, 1996.—Decided March 13, 1997.*

(Also reported in 563 N.W.2d 178.)

---

[1] The middle initial, "A," appears on the caption before the court of appeals, but the complaint and the deed, on which it is based, use "H" as Ms. Arnold's middle initial.

---

For the plaintiff-appellant the cause was submitted on the briefs of *Duane M. Jorgenson* of *Jorgenson Law Office* of Darlington.

For the defendants-respondents the cause was submitted on the brief of *Sheila Stuart Kelley* of *Kopp, McKichan, Geyer and Skemp* of Platteville.

Before Eich, C.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J.   Robin Arnold appeals a judgment declaring the boundary line between her property and that of her neighbors, John and Linda Robbins, to be one marked by a common grantor, rather than the lot line established by the recorded plat map. Because we conclude that the facts found by the trial court are insufficient to satisfy the common grantor exception to the doctrine of acquiescence, which requires that the lots be purchased pursuant to a common reference line, we reverse and remand with directions to enter judgment consistent with this opinion.

## BACKGROUND

The parties in this case own Lots 4 and 5 in the unincorporated village of New Diggings. Both lots had been owned by Robert and Rebecca Seymour at one point in their chains of title. The Seymours conveyed Lot 4 to the defendants John and Linda Robbins in 1983, and Lot 5 to Robert and Betty Thompson in 1984. Ten years later, the Thompsons sold Lot 5 to the plain-

tiff, Robin Arnold. Each conveyance was made pursuant to a warranty deed, which described the property according to lot numbers in the recorded plat for Cothern's Addition to the Village of New Diggings.

In 1978, when the Seymours owned Lot 4, but had not yet purchased Lot 5, they drilled a well on what they mistakenly believed to be a part of Lot 4. When they sold Lot 4 to the Robbinses, Robert Seymour told them that the property line ran down the middle of a 500 gallon propane tank, which then stood on two concrete pads. Seymour also specifically pointed out the well and explained that it was about three feet within the Lot 4 boundary.

Later, when the Seymours sold Lot 5 to the Thompsons, they did not show or describe any boundary line to them. The Seymours' deed to the Thompsons describes the property by lot number according to the recorded plat. Two months after the Thompsons purchased Lot 5, they had the property surveyed, and discovered that the well was located 1.25 feet within Lot 5. They brought their apparent ownership of the well to the Robbinses' attention and talked about a well agreement, but none was made.

When the Thompsons sold to Arnold, they explained the boundary dispute to her before she purchased Lot 5. After her purchase, Arnold initiated this action, seeking declaratory judgment that she held good title to all the land in Lot 5, as described in the recorded plat map for Cothern's Addition to the Village of New Diggings. The Robbinses raised the doctrine of acquiescence as an affirmative defense, and the trial court found in their favor.

## DISCUSSION

### Standard of Review.

We will not disturb the trial court's findings of the representations made during the course of a sale, unless they are clearly erroneous. Section 805.17(2), STATS.; *see also Beasley v. Konczal*, 87 Wis. 2d 233, 235, 275 N.W.2d 634, 635 (1979). However, whether established facts satisfy a legal standard, such as whether they are sufficient to invoke the doctrine of acquiescence, is a question of law which this court reviews *de novo. See Janesville Community Day Care Center, Inc. v. Spoden*, 126 Wis. 2d 231, 237, 376 N.W.2d 78, 81 (Ct. App. 1985).

### Acquiescence.

The doctrine of acquiescence allows land to be acquired by adverse possession, without the usual adverse intent, when the true owner has acquiesced in another's possession for a period of twenty years. *Buza v. Wojtalewicz*, 48 Wis. 2d 557, 563, 180 N.W.2d 556, 559 (1970). However, there is well-settled exception to the requirement that the true owner acquiesce for twenty years which occurs when:

> [a]djoining owners take conveyances from a common grantor which describe the premises conveyed by lot numbers, but such grantees have purchased with reference to a boundary line then marked on the ground, such location of the boundary line so established by the common grantor is binding upon the original grantees and all persons claiming

under them, irrespective of the length of time which has elapsed thereafter.

*Thiel v. Damrau*, 268 Wis. 76, 81, 66 N.W.2d 747, 750 (1954). Once the facts establishing acquiescence, or purchase from a common grantor by the use of a common boundary reference, are proven, the true owner is estopped from claiming title to the disputed land. *See Buza* at 567, 180 N.W.2d at 561.

It is undisputed that the land at issue has been adversely occupied for less than twenty years. There is also no dispute that the parties in this case own adjoining lots that at one point in time had a common owner. The issues raised are, first, whether improvements such as a well or cement slabs, on which a propane tank once sat, may qualify as a boundary "then marked on the ground," and second, whether a grantee may be said to have "purchased with reference" to a "marked" boundary when he had seen the property prior to purchase, but the grantor did not point out the landmarks, which it is now maintained, set the true boundary.

██

Arnold argues that a boundary line can be "marked" only by survey stakes for common reference purposes, limiting *Thiel* to its facts. However, we decline to read the case that narrowly. The purpose of the *Thiel* rule is to ascertain the intention of the parties with respect to the land they thought was conveyed. *See Kraus v. Mueller*, 12 Wis. 2d 430, 439, 107 N.W.2d 467, 471 (1961), *rev'd on other grounds*. Moreover, improvements, such as buildings, may constitute monuments which may be material in establishing disputed boundary lines. *See, e.g., City of Racine v. J.I. Case Plow Co.*, 56 Wis. 539, 541, 14 N.W. 599, 600 (1883). We conclude that the use of an easily visible

well or cement pads on the ground as boundary markers may operate to mark a boundary on the ground, and that the trial court's finding that the Seymours had marked a line three feet west of the well which runs through the cement pads, as the boundary between lots 4 and 5, when they sold to the Robbinses, is not clearly erroneous.

We next consider whether or not Arnold's predecessor in interest, the Thompsons, purchased with reference to the boundary line marked by the Seymours. The trial court found that the Thompsons were aware of the well pipe and cement pads when they purchased Lot 5. It also found the Seymours had never pointed out these "markers" to them or told them the boundary between Lots 4 and 5 was determined by reference to them. Nevertheless, it concluded that the Thompsons "acquiesced" in the boundary line running through the center of the cement pads three feet west of the well. However, locating a boundary line by reference to landmarks on the ground "does not rest upon acquiescence in an erroneous boundary," but upon the proposition that when a common grantor makes common representations, what was represented becomes the true boundary, and the subsequent conveyance is made with reference to it. *Thiel*, 268 Wis. at 82, 66 N.W.2d at 751. Therefore, while the Thompsons' mistaken belief that the well was located on Lot 4 would be relevant to an analysis of whether they had acquiesced to an erroneous boundary line for a period of twenty years, it does not resolve the question of whether they purchased Lot 5 with reference to a boundary marked by concrete cement pads.[2] Such reference requires

---

[2] When the Robbinses purchased Lot 4, the cement pads had a 500 gallon propane tank standing on them, which tank

communication between the grantor and the grantee at the time of the conveyance. *Thiel*, 268 Wis. at 81, 66 N.W. at 750. The only communication the Seymours made to the Thompsons regarding the boundary was that Lot 5 did not include the well. The Thompsons cannot be held to have purchased with reference to markers which were not pointed out to them at the time of the conveyance. We conclude that the survey line established by the recorded plat map controls the terms of the title they obtained from the Seymours, and as the Thompsons were Arnold's grantors, she takes whatever title they had.[3]

## CONCLUSION

While a boundary line for lots conveyed by a deed that makes reference to lot numbers, rather than metes and bounds measurements, may be established by reference to such fixed objects as cement pads, a common grantor must designate those markers as the land's boundaries to each of the parties to whom he conveys land in order for the boundary to be controlled by landmarks marked on the ground. That did not occur here; therefore the terms of the deed control.

---

the Robbinses removed before the Thompsons purchased Lot 5. These pads were located approximately three feet further into Lot 5 than the well, which was about 1.25 feet into the easterly boundary of Lot 5. However, it was with reference to the propane tank as the common boundary between Lot 4 and Lot 5 that the Robbinses purchased.

[3] While this result may seem inequitable to the Robbinses, whose purchase price included the value of the well, we note that it is in accord with Wisconsin's preference for giving effect to deeds.

*By the Court.*—Judgment reversed.