2001 ND 90

**Juanita D. JAMES, David M. James and Leanna Hudson, Plaintiffs and Appellants,**

v.

**Paul GRIFFIN and Julene Griffin, Defendants and Appellees.**

**No. 20000216.**

Supreme Court of North Dakota.

May 22, 2001.

Rehearing Denied July 10, 2001.

Dan D. Plambeck (submitted on brief), Stefanson, Plambeck & Foss, Moorhead, MN, for plaintiffs and appellants.

Janel B. Fredericksen (submitted on brief), Smith & Strege, Wahpeton, ND, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Juanita D. James, David M. James, and Leanna Hudson (collectively referred to as "James") appealed from a judgment quieting title in Paul and Julene Griffin to a 4–feet by 173–feet piece of residential property. We conclude the trial court correctly ruled James failed to establish ownership of the disputed parcel of property under the doctrine of acquiescence, and we affirm.

I

[¶ 2] The parties own and occupy adjoining property. James owns Lot 4, and the Griffins own Lots 5 and 6, in Block 1 of Hubbard and Tyler's Addition to the City of Wahpeton. George James, who was the husband of Juanita James and father of David James and Leanna Hudson, purchased Lot 4 from Arnold L. Olson through a warranty deed dated October 16, 1945.

[¶ 3] George and Juanita James owned the property until September 5, 1979, when they gave the City of Wahpeton a warranty deed to the property because their house had been condemned. They vacated the property, a new house was placed there, and on November 20, 1979, the City gave them a quit claim deed to Lot 4, and they resumed occupancy. In 1997, Juanita James received Lot 4 from her husband's estate, and she transferred the property to her children, reserving a life estate.

[¶ 4] In August 1995, the Griffins purchased Lots 5 and 6 from Elva Lambert, who had occupied the property from 1956 until its sale to the Griffins. The Griffins had the property surveyed in June 1998 to determine the actual platted lot line between Lots 4 and 5. The Griffins discovered James's brick fireplace, gravel drive, and old garage foundation encroach on their property. According to James, the structures had been placed there long before 1979. The Griffins erected a fence on the actual plat line in 1998 in an attempt to prevent James from encroaching on their property.

[¶ 5] James began this quiet title action in April 1999. James alleged that prior to May 1998 and for a period substantially exceeding 20 years, the owners of Lots 4 and 5 mutually recognized as the boundary between their lots a line defined by a row of trees located four feet south of the north line of Lot 5, and James had acquired superior title to the disputed property under the doctrine of acquiescence. The Griffins counterclaimed, seeking to have title to the disputed property quieted in them.

[¶ 6] At the "Pretrial Conference and Bench Trial," the trial court encouraged the parties to settle. After settlement negotiations proved unsuccessful, the court held the pretrial conference and alerted the parties to an issue neither side had addressed. The court noted the chain of title had been broken for a period of time in 1979 when James deeded the property to the City of Wahpeton. The court informed counsel of its intention to dismiss James's lawsuit unless James could show continuous acquiescence during the entire 20 years preceding construction of the fence by the Griffins in 1998. James argued there was continuous acquiescence in the boundary line from 1945 until 1979, thereby satisfying the 20–year requirement. The court allowed the parties to present testimony and exhibits, and Juanita James, David James, and Leanna Hudson testified. The Griffins presented no evidence.

[¶ 7] The trial court ruled:

2. Plaintiffs have submitted no evidence showing that their predecessor in interest, the City of Wahpeton, mutually recognized with the adjoining lot owner, the boundary they now claim. It is undisputed that Plaintiffs regained ownership of the property by Quit Claim Deed from the City of Wahpeton dated November 20, 1979. It is also undisputed that 20 years have not elapsed between November 20, 1979 and the time (1998) when Defendants placed a fence on the plat line after survey. Therefore, Plaintiffs cannot show at least twenty years mutual intent,

agreement, and acquiescence to the boundary they claim . . .

3. Plaintiffs' claim that they are allowed to "tack" the period from first ownership (1945) to the present which would clearly be more than the twenty years required. "Tacking" is allowed . . . However, "tacking" of any predecessor's ownership still requires that all elements of the doctrine of acquiescence be shown during any predecessor's interest in the property. In this case, there has been no evidence, much less clear and convincing evidence, showing that the City of Wahpeton mutually intended, agreed and acquiesced with the adjoining land owner concerning the boundary claimed by Plaintiffs during the City's ownership of Plaintiffs' Lot Four (4). Therefore, as a matter of law, "tacking" any period prior to 1979 is not allowed and the period from which to measure the minimum twenty-year requirement must commence after the property was deeded back to Plaintiffs' predecessors from the City in 1979.

4. The brick fireplace, gravel drive and old garage foundation which encroach on Defendants' property were all initiated prior to 1979 and for the reasons stated in the foregoing paragraph 3 of these Conclusions of Law cannot be used to "tack" to Plaintiffs' ownership from and after 1979. No evidence was submitted that the City of Wahpeton even knew that any of these structures encroached on Defendants' property nor was there any evidence submitted showing that even if the City knew of these encroachments, that these encroachments were intended by the City as a mutual acquiescence to a new boundary and

not some sort of license type arrangement.

The court dismissed James's complaint and quieted title in the Griffins.

[¶ 8] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. James's appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 9] We reject James's argument the trial court's ruling should be treated as granting a motion for judgment on the pleadings under N.D.R.Civ.P. 12(c). The parties were allowed to present testimony, exhibits, and trial memoranda on the narrow factual issue of whether the City of Wahpeton recognized the boundary allegedly established by James. The trial court's finding on that issue is governed by the clearly erroneous standard under N.D.R.Civ.P. 52(a). *See Knutson v. Jensen*, 440 N.W.2d 260, 262 (N.D.1989). Because James does not challenge the trial court's finding that the City did not recognize the boundary during its ownership of the property in 1979, the legal question becomes whether James could establish acquiescence by relying on a continuous 20–year period of mutual recognition by the parties or their predecessors before the City became the owner of the property in 1979. Questions of law are fully reviewable on appeal. *Thompson v. Associated Potato Growers, Inc.*, 2000 ND 95, ¶ 7, 610 N.W.2d 53.

[¶ 10] The doctrine of acquiescence was created to allow a person to acquire property when occupying part of a neighbor's land due to an honest mistake as to the location of the true boundary, because the adverse intent requirement of the related doctrine of adverse possession

could not be met under those circumstances. *Production Credit Association v. Terra Vallee, Inc.*, 303 N.W.2d 79, 83–84 (N.D.1981). To establish a new boundary line by acquiescence, it must be shown by clear and convincing evidence that the parties recognized the new boundary line as a boundary, and not a mere barrier, for at least 20 years. *Knutson*, 440 N.W.2d at 262. Although acquiescence may be found from a party's silence, or inferred from conduct, *Ward v. Shipp*, 340 N.W.2d 14, 16 (N.D.1983), the burden of proving acquiescence rests with the person claiming property to the exclusion of the true owner. *Manz v. Bohara*, 367 N.W.2d 743, 748 (N.D.1985).

[¶ 11] As in adverse possession, the principle of tacking is applicable to claims of acquiescence. *Bernier v. Preckel*, 60 N.D. 549, 557, 236 N.W. 243, 247 (1931). Thus, acquiescence in a boundary line is binding on the parties thereto and those claiming under them, and where successive adverse occupants hold in privity with each other under the same claim of title, the time limit for maintaining an action may be computed by the last occupants from the date the cause of action accrued against the first adverse user. *Trautman v. Ahlert*, 147 N.W.2d 407, 412 (N.D.1966). Our caselaw makes it clear that when tacking is relied upon to meet the 20–year period, it must result in a single continuous acquiescent possession. *See, e.g., Brooks v. Bogart*, 231 N.W.2d 746, 751 (N.D.1975); *Ahlert*, 147 N.W.2d at 411–12; *Severson v. Simon*, 110 N.W.2d 289, 292 (N.D.1961); *Morgan v. Jenson*, 47 N.D. 137, 141–42, 181 N.W. 89, 90–91 (1921). If a possession is not adverse to the true owner, it may not be tacked to satisfy the 20–year period. *See McGee v. Stokes' Heirs at Law*, 76 N.W.2d 145, 151–52 (N.D.1956). Temporary possession in a government entity does not relieve the party claiming acquiescence or adverse possession from showing the government entity's possession was adverse. *See Grandin v. Gardiner*, 63 N.W.2d 128, 132–33 (N.D.1954).

[¶ 12] The 20–year requirement for establishing acquiescence comes from the statutory period required for acquisition of title by adverse possession. *Odegaard v. Craig*, 171 N.W.2d 133, 137 (N.D. 1969); *Bernier*, 60 N.D. at 557, 236 N.W. at 247. The statute of limitations for quiet title actions based on adverse possession or acquiescence is found in N.D.C.C. § 28–01–04, which provides:

> No action for the recovery of real property or for the possession thereof may be maintained, unless the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action.

Unless James was possessed of the property at issue within 20 years before beginning the quiet title action, James is barred from maintaining an action to quiet title to the property based on the doctrine of acquiescence. *See Haas v. Bursinger*, 470 N.W.2d 222, 223 (N.D.1991). Under the plain terms of the statute, the 20–year period is measured back from the commencement of the action.

[¶ 13] James relies on cases from other jurisdictions to support the argument that the boundary was established by more than 20 years of acquiescence by the parties and their predecessors before the City took title to the property in 1979, and the title thereby acquired passed to any subsequent owners. None of the cases relied on by James involved acquiescent possessions by others, interrupted by a nonacquiescent possession of another. Moreover, this Court recognized in *Terra Vallee, Inc.*, 303 N.W.2d at 84, "there is little uniformity among the states in [the] application and

requirements" of acquiescence. James's reliance on *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997), and *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 808 (Iowa 1994), is misplaced because those cases are based on an Iowa statute that, unlike the North Dakota statute, does not tie the statutory period to the commencement of the action.[1] To the extent the Iowa cases or *Brown v. Gobble*, 196 W.Va. 559, 474 S.E.2d 489, 497 n. 11 (1996), support James's argument, we find the rule espoused in those cases impossible to harmonize with the plain language of N.D.C.C. § 28–01–04.

[¶ 14] Other courts have held that once prior acquiescence of a boundary has been destroyed, the statutory clock for obtaining title by acquiescence begins "ticking anew." *Salazar v. Terry*, 911 P.2d 1086, 1089 (Colo.1996). *See also Conklin v. Newman*, 278 Ill. 30, 115 N.E. 849, 850 (1917); *Patton v. Smith*, 171 Mo. 231, 71 S.W. 187, 190 (1902). We believe the approach taken by these courts better serves the public interest in predictability and certainty in the area of property rights and real estate titles. *See North Shore, Inc. v. Wakefield*, 530 N.W.2d 297, 303 (N.D.1995); *Kim–Go v. J.P. Furlong Enterprises, Inc.*, 460 N.W.2d 694, 698 (N.D. 1990). A rule allowing record title of property to be lost by a 20–year period of unadjudicated acquiescence occurring in the distant past does not foster predictability and certainty of property rights. *See generally* Owen L. Anderson & Charles T. Edin, *The Growing Uncertainty of Real Estate Titles*, 65 N.D.L.Rev. 1 (1989).

[¶ 15] We are guided by our statutes and caselaw on acquiescence. Section 28–01–04, N.D.C.C., requires a person seeking title by acquiescence to have been "possessed of the premises in question *within 20 years before the commencement of such action.*" (Emphasis added). James's argument that the boundary line was established by a 20–year period of acquiescence before the City took title in 1979 would had to have been asserted at that time. Because there was no evidence indicating the City recognized the boundary claimed by James, the twenty-year period begins to run when the City relinquished its title. Because James did not show acquiescent possession of the premises in question for a period of 20 years before commencing the action, we conclude the trial court did not err in dismissing · James's action and quieting title in the Griffins.

### III

[¶ 16] The judgment is affirmed.

[¶ 17] CAROL RONNING KAPSNER, J., concurs.

VANDE WALLE, C.J., I concur in the result reached by Justice Sandstrom's opinion.

NEUMANN, Justice, dissenting

[¶ 18] Because I believe the twenty-year requirement for establishing acquiescence need not be the twenty years immediately before suit is brought, I respectfully dissent.

[¶ 19] Citing cases from other jurisdictions for support, James argues the boundary was established before the City took title to the property in 1979 by more than twenty years of acquiescence by the parties and their predecessors. At ¶ 13, the majority distinguishes the cases James

---

1. Iowa Code § 650.14 (2000) provides:
   If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established.

cites, stating, "None of the cases relied on by James involved acquiescent possessions by others, interrupted by a nonacquiescent possession of another." This statement skirts the issue that I deem dispositive: If James can show the boundary was established through acquiescence, it is irrelevant whether the City acquiesced during its two-month ownership. The City's intervening ownership could not have destroyed the boundary, once it was established:

> Where recognition and acquiescence have continued for the period of time prescribed by statutes concerning acquiescence or for the period required by statutes of limitations for acquisition of title by adverse possession, the presumption that the line is in fact the true line or that there has been an agreement fixing it as the true line becomes conclusive, and the line as acquiesced in is conclusively established as the boundary. As established it will control courses and distances called for in title deeds or grants, and the parties need not rely on paper title.

11 C.J.S. *Boundaries* § 87 (1995) (footnotes omitted); *see Crowden v. Grantland,* 510 So.2d 238, 240 (Ala.1987) (stating that once title vests in a boundary through acquiescence by adjoining landowners, it can be divested only through conveyance or by losing the property to another adverse possessor); *Lakeview Farm, Inc. v. Enman,* 166 Vt. 158, 689 A.2d 1089, 1092 (1997) (stating that once a boundary is established by acquiescence, the line is conclusive upon successors in title); *Arnold v. Robbins,* 209 Wis.2d 428, 563 N.W.2d 178, 180 (App.1997) (stating that once acquiescence is established, the true owner is estopped from claiming title to the disputed land); *Carter v. Hanrath,* 885 P.2d 801, 804 (Utah Ct.App.1994), *rev'd on other grounds,* 925 P.2d 960 (Utah 1996) (stating that once the elements of bound-

ary by acquiescence are established, there is a presumption of ownership).

[¶ 20] The majority insists James's argument and the rule espoused in the cases James cites cannot be harmonized with N.D.C.C. § 28–01–04. I disagree. In my opinion, N.D.C.C. § 28–01–04, does not "tie the statutory period to the commencement of the action," as the majority maintains at ¶ 13. Under N.D.C.C. § 28–01–04:

> No action for the recovery of real property or for the possession thereof may be maintained, unless the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action.

This statute provides the statute of limitations for adverse possession and acquiescence cases. *Odegaard v. Craig,* 171 N.W.2d 133, 137 (N.D.1969). We borrow the length of the statute of limitations and use it as the measuring stick for the length of time necessary to establish acquiescence. However, N.D.C.C. § 28–01–04, does not provide that a plaintiff must have been in possession for twenty years immediately before bringing an action, and we have never held that a plaintiff must have been in possession for twenty years immediately before bringing an action. Rather, we have determined only that a boundary line must be recognized by the parties for at least twenty years, without reference to when the twenty years must occur. *See, e.g., Knutson v. Jensen,* 440 N.W.2d 260, 262 (N.D.1989) ("To establish a new boundary line by acquiescence, it must be shown by clear and convincing evidence that the parties recognized the new boundary line as a boundary, and not a mere barrier, *for at least twenty years* " (emphasis added)); *Production Credit Ass'n v. Terra Vallee, Inc.,* 303 N.W.2d 79, 85 (N.D. 1981) (concluding that "to establish a new

boundary line, it must be acquiesced in by the parties as the boundary between their lands *for at least twenty years* " (emphasis added)).

[¶ 21] The majority maintains that James's argument that the boundary line was established before the City took possession in 1979 had to have been asserted at that time. The majority opines, at ¶ 14, "A rule allowing record title of property to be lost by a 20–year period of unadjudicated acquiescence occurring in the distant past does not foster predictability and certainty of property rights." However, there is nothing unpredictable about unadjudicated acquiescence because:

> Where recognition and acquiescence have continued for the period of time prescribed by statutes concerning acquiescence or for the period required by statutes of limitations for acquisition of title by adverse possession, the presumption that the line is in fact the true line or that there has been an agreement fixing it as the true line becomes conclusive, and the line as acquiesced in is conclusively established as the boundary.

11 *Boundaries* § 87 (1995) (footnote omitted). Furthermore, if the Court were to conclude the twenty-year requirement for establishing acquiescence need not be the twenty years immediately before suit is brought, a plaintiff would still be bound by the twenty-year statute of limitations for bringing suit, provided in N.D.C.C. § 28–01–04, which provides a plaintiff must have been in possession *within* twenty years of bringing an action.

[¶ 22] The trial court found James's brick fireplace, gravel drive, and old garage foundation encroached on the Griffins' property. The trial court found the Griffins erected a fence in 1998 on the actual property line to prevent James from encroaching on the Griffins' property. The parties do not dispute that James was in possession of the disputed property until the Griffins erected the fence in 1998. Thus, James was possessed of the property at issue within twenty years before beginning quiet title action. Accordingly, in my opinion, James's action is not barred by the statute of limitations provided in N.D.C.C. § 28–01–04.

[¶ 23] I would reverse and remand for the trial court to determine whether twenty years of acquiescence had in fact occurred prior to the City's brief ownership in 1979.

[¶ 24] MARY MUEHLEN MARING, J, concurs.